I do to**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **WILLIAM L. VAUGHN, #348411,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:15-cv-0034** |
| | ) | |
| **STEVENSON NIXON, Warden,** | ) | **Judge Trauger** |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

Petitioner William L. Vaughn, a state prisoner incarcerated at the Lois M. DeBerry Special Needs Facility in Nashville, Tennessee, filed a *pro se* petition under 28 U.S.C. § 2254 for the writ of habeas corpus. (ECF No. 1.) The respondent filed an answer in opposition to the petition (ECF No. 48), along with a copy of the underlying state-court record (ECF No. 33). With permission from the court, the petitioner filed a reply brief (ECF No. 63). The petition is ripe for review, and this court has jurisdiction. 28 U.S.C. § 2241(d).

Upon consideration of the petition and supporting memorandum, the answer, reply, and the underlying record, the court finds for the reasons set forth herein that an evidentiary hearing is not warranted and that the petitioner is not entitled to relief on the grounds asserted. Vaughn's petition will be denied and this matter dismissed.

## I.    PROCEDURAL AND FACTUAL HISTORY

On October 15, 2001, the petitioner was indicted by a Davidson County Grand Jury on nine counts of unlawful sexual contact with a minor under the age of 13. (ECF No. 33-1, at 3.) Counsel was appointed and the petitioner entered an initial plea of not guilty. Counsel filed a motion for a bill of particulars, a motion to sever, and a motion to suppress the petitioner's statement to the police. In May 2002, while the motion to suppress was still pending, the petitioner entered a negotiated *nolo contendere* plea to two of the nine counts in exchange for the dismissal of the remaining seven counts and a

sentence cap of twenty years.[1] In July 2002, the court sentenced the petitioner to two consecutive terms of ten years each, for a total effective sentence of twenty years. (Judgments, ECF No. 33-1, at 32–33.)

The petitioner pursued a direct appeal, through different counsel, arguing that the trial court had erred in ordering the sentences to be served consecutively, in failing to consider a mitigating factor that was established by the evidence, and in finding the presumptive sentence to be the mid-point of the applicable range. The state conceded that the trial court had erred at sentencing in relying on the "enhancement factor" found at Tenn. Code Ann. § 40-35-114(8) (Supp. 2002)—that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement—since this factor was also an element of the offense of aggravated sexual battery. *Vaughn I*, 2003 WL 21877929, at *2. The state also conceded that the trial court erred in concluding that its sentencing consideration should begin at the midpoint of the applicable range for Class B felonies; instead, the presumptive sentence for a Class B felony is the minimum sentence in the range. *Id.*

The Tennessee Court of Criminal Appeals nonetheless affirmed the conviction and sentence. *State v. Vaughn* ("*Vaughn I*"), No. M2002-01879-CCA-R3-CD, 2003 WL 21877929, at *1 (Tenn. Ct. Crim. App. Aug. 1, 2003) (footnote omitted), *perm. app. denied* (Tenn. Dec. 22, 2003). The court found that the trial judge had appropriately applied enhancement factor (16), Tenn. Code Ann. § 40-35-114(16) (Supp. 2002), based on the petitioner's abuse of a position of private trust. The court also found that enhancement factor (2), Tenn. Code Ann. § 40-35-114(2) (Supp. 2002) (permitting enhancement of a sentence on the basis that "the defendant has a previous history of criminal convictions or criminal

---

[1] The appellate court summarized the evidence presented during the plea proceedings as follows:
> On September 7, 2001, ten-year-old A.V. and her sister spent the night with the defendant's stepchildren. The proof indicated A.V.'s family lived next door, and A.V. and the defendant's ten-year-old stepdaughter, L.O., were best friends. As the children slept on the floor, the defendant awakened A.V. when he rubbed his penis on her face. The next morning, A.V. recounted the incident to L.O. and the defendant's wife, L.O.'s mother. When the police questioned the defendant, he admitted that he unfastened A.V.'s pants, touched her underwear, and rubbed his penis on her face. Further, he confessed to performing similar acts upon L.O. "probably at least twenty times." He stated he had touched L.O.'s vagina through her underwear, rubbed his penis on her face, and placed his penis in her hand while she was asleep. The defendant told the police the abuse began when the family was living in Texas, where he also attempted intercourse with L.O. According to his recorded statement, "three or four" of the incidents occurred in Tennessee.

*State v. Vaughn* ("*Vaughn I*"), No. M2002-01879-CCA-R3-CD, 2003 WL 21877929, at *1 (Tenn. Ct. Crim. App. Aug. 1, 2003) (footnote omitted), *perm. app. denied* (Tenn. Dec. 22, 2003).

behavior in addition to those necessary to establish the appropriate range"),[2] which the trial court had not considered, also applied. *Vaughn I*, 2003 WL 21877929, at *3. The appellate court found that these enhancement factors "justified" the mid-range ten-year sentence for each offense, despite the trial court's errors, and that the mitigating factors pointed out by the defense[3] were "entitled to little weight" in light of the enhancement factors.

On March 8, 2004, after his conviction and sentence were affirmed and the Tennessee Supreme Court denied review, the petitioner filed a timely *pro se* petition for post-conviction relief (ECF No. 33-10, at 15), accompanied by a Memorandum of Law (*id.* at 23–32) and a motion to appoint counsel, as well as a motion to proceed *in forma pauperis*. On March 25, 2004, the trial court granted the latter motions and initially appointed David Hopkins to represent the petitioner in post-conviction proceedings. (*Id.* at 45.) On May 10, 2005, more than a year later, the petitioner filed a *pro se* "Affidavit of Facts and Arguement [sic] in Support of Post Conviction" (*id.* at 47–63), "Affidavit of Facts Concerning Petitioners Statement Tape" (*id.* at 64–72), "Affidavit of Facts Concerning the Allegations of Case #2001-D-1990" (*id.* at 73–79), and 140 pages of exhibits (*id.* at 80–219). In July 2005, attorney Hopkins filed a motion to continue the post-conviction hearing, then scheduled for July 27, 2005, to allow him additional time to "finalize" an amended petition and to subpoena witnesses. (ECF No. 33-11, at 3.) The motion was granted with a hearing date to be determined. (*Id.* at 4.) Shortly thereafter, Hopkins filed a motion to withdraw as counsel.

In August 2005, Judge Wyatt recused himself from the case without ruling on that motion. The matter was assigned to Judge Monte Watkins (ECF No. 33-11, at 7), who granted attorney Hopkins' motion to withdraw and appointed attorney Dwight Scott. (*Id.* at 8.) The court then permitted attorney Scott to withdraw, on the basis that he had been the petitioner's appellate counsel for a brief period of time, and appointed David Collins in his stead. (*Id.* at 10, 12.) The court directed attorney Collins to file an amended petition if necessary. (*Id.* at 12.) A few months later, in November 2005, the court permitted

---

[2] The "lengthy history" of criminal behavior included "prior criminal convictions for driving under the influence and possession of marijuana," as well as the admitted abuse of victim L.O. that did not result in convictions. *Vaughn I*, 2003 WL 21877929, at *3. The court noted that, "[a]lthough the other offenses against victim L.O. and the drug usage did not result in corresponding convictions, it may still be considered criminal behavior under enhancement factor (2)." *Id.* (citing *State v. Carico*, 968 S.W.2d 280, 288 (Tenn. 1998)).

[3] The defendant relied on the fact that there was no evidence of physical or mental injury to the victims and that he had turned himself in, accepted responsibility, and expressed remorse.

Collins to withdraw and appointed attorney Charles Walker. (*Id.* at 15.) In January 2006, Walker filed a motion to withdraw on the basis that he was unable to develop a working relationship with the petitioner and that the petitioner had requested his withdrawal and filed a complaint against him with the Tennessee Board of Professional Responsibility. (*Id.* at 17–18.) In February 2006, the court granted that motion and appointed attorney Michael Colavecchio. (*Id.* at 20.)

In July 2006, while he was still represented by counsel, the petitioner filed a *pro se* document styled "Additional Information Affidavit for Post Conviction. A Second Affidavit of Facts and Arguement [sic] in Support of Post Conviction" (ECF No. 33-11, at 23–43), again with numerous exhibits (*id.* at 45–133), many (but by no means all) redundant of those submitted with the petitioner's earlier affidavits.

In February 2007, Michael Colavecchio filed his motion to withdraw on the basis that he had been unable to contact potential witnesses as requested by the petitioner and that the petitioner had accused Colavecchio of lying to him. (*Id.* at 135.) Around the same time, the petitioner filed his own "Motion to Dismiss Court Appointed Counsel and Proceed *Pro-Se* in Post Conviction Relief." (*Id.* at 136.) Judge Watkins conducted a hearing on April 4, 2007 and granted both motions. (*Id.* at 145.)

At the same hearing, the petitioner was permitted to file his *pro se* "Amended Petition for Post Conviction Relief." (ECF No. 33-12, at 2–90.)[4] To this document are appended all the petitioner's previously filed "affidavits," including the "Additional Information Affidavit for Post Conviction. A Second Affidavit of Facts and Arguement [sic] in Support of Post Conviction" (*Id.* at 91–111), "Affidavit of Facts and Arguement [sic] in Support of Post Conviction" (*id.* at 113–29), "Affidavit of Facts Concerning Petitioner's Statement Tape" (*id.* at 130–37), "Affidavit of Facts Concerning the Allegations of Case #2001-D-1990" (*id.* at 139–45), and numerous exhibits including the original Petition for Relief from Conviction or Sentence (*id.* at 678), and Memorandum of Law (*id.* at 697).

Also at the hearing conducted on April 4, the trial court instructed the petitioner that he should provide the court with the list of names of individuals he wanted to subpoena for his post-conviction hearing and that the court clerk would issue the subpoenas for him. (April 4, 2007 Hr'g Tr., ECF No. 33-14, at 7.)

---

[4] This document was signed and dated January 2, 2007. It does not have a "received" stamp on its first page, but a handwritten notation that is illegible except for the date, "4/4/07." (ECF No. 33-12, at 2.)

The post-conviction hearing was conducted in three different sessions on May 16, June 20, and September 12, 2007. (Post-Conviction Hr'g Tr., ECF Nos. 33-14, 33-15.) On May 16, 2007, the actual hearing was postponed because the petitioner's trial attorney, whom the petitioner had subpoenaed as a witness, was not able to appear. However, numerous other witnesses subpoenaed by the petitioner had appeared for the hearing. The judge advised the petitioner that he would not be permitted to call most of the witnesses he had subpoenaed, specifically including the two minor victims, Judge Wyatt, and the attorneys who were appointed to represent the petitioner in post-conviction proceedings. (May 16, 2007 Hr'g Tr., ECF No. 33-14, at 10.) Judge Watkins told him: "Your [post-conviction attorneys] really have nothing to do with the post conviction petition, other than the fact that they were appointed and subsequently relieved from representing you. Judge Wyatt is just – you don't subpoena judges on these kinds of matters. And the victims, of course, are not subpoenaed on a post conviction petition. All the rest of the folks, I think, are available to be subpoenaed and I'm sure will be present." (*Id.* at 10.) [5]

The hearing was reconvened on June 20, 2007. It appears that, prior to that date, the court clerk reissued subpoenas for each of the witnesses who had been subpoenaed for the May 16 hearing. The prosecutor was initially under the impression that the petitioner himself had requested that the subpoenas be reissued, and he incorrectly represented to the trial court that the court had previously admonished the petitioner, "in no uncertain terms[,] that the only witnesses that would be heard would be Mr. McKinney [trial attorney] and himself, and that no other witnesses were to be subpoenaed." (*Id.* at 15.) The trial court, without actually inquiring into the identity of any of the witnesses, released all of them except for the petitioner's trial attorney, Robin McKinney. (*Id.* at 15–16.) The petitioner argued, as he had previously, that he needed witnesses to support his claims that Mr. McKinney had not interviewed the victims or other witnesses. He argued that without these witnesses, the case boiled down to his word against Mr. McKinney's, and the petitioner assumed that the court would believe the attorney's testimony over his. The petitioner also argued that he needed to show the ineffectiveness of his preliminary-hearing attorney

---

[5] The record does not clearly reflect who was actually subpoenaed or who appeared at the hearing. The petitioner apparently intended to subpoena several individuals who testified on his behalf at sentencing, as well as his former wife Monica Bennett, his former stepdaughter (the victim referred to as "L.O." by the Tennessee Court of Criminal Appeals), six of his previous attorneys, including his attorneys at trial, at the preliminary hearing, and on appeal (in addition to his post-conviction attorneys); trial judge Randall Wyatt, and prosecutor Bernard McEvoy. (*See* 4/29/2007 Letter to Crim. Ct. Clerk requesting subpoenas, ECF No. 33-13, at 73.)

and appellate counsel, who were not the same as his trial attorney. The court overruled his objections and the hearing proceeded. Only the trial attorney, Robin McKinney, testified at the June 20 setting of the hearing. The trial court narrowed the permitted scope of his testimony to issues concerning the plea.

The court reconvened the hearing on September 12, 2007, to give the petitioner the opportunity to testify. At that time, however, instead of testifying, the petitioner submitted to the court his written sworn statement. He explained to the court that the document he was filing contained his sworn statement as well as "other evidences," including sworn statements from witnesses he was not permitted to call, and that he had chosen to proceed in this fashion "just in case [he] wasn't allowed to verbally argue everything today." (ECF No. 33-15, at 4.) He inquired whether everything he was filing would be "preserved for the record," and the court assured him that it would be. (*Id.* at 5.)[6]

The prosecutor then stated that he had "really no reason to call Mr. Vaughn" to testify and that the trial attorney's testimony would be the State's proof on the matter, along with the entire record of the underlying proceedings. (*Id.* at 9.) Mr. Vaughn did not testify. The court did not specifically ask Mr. Vaughn if he wished to testify or explain to him the potential effect of not testifying.

The trial court entered an order dated December 31, 2007, denying the petition for post-conviction relief. (ECF No. 33-13, at 197.) The petitioner appealed, asserting among other claims that the trial court had erred in finding that his plea was voluntary and that he had not been prejudiced by the ineffective assistance of his counsel at the plea proceedings; and that the court had erred in restricting the evidence and witnesses the petitioner was permitted to present during the post-conviction hearing, specifically by excluding witnesses the petitioner wanted to present, excluding evidence that preliminary hearing and appellate counsel had provided constitutionally ineffective assistance, refusing to consider the petitioner's claims of ineffective assistance of preliminary hearing and appellate counsel, and refusing to allow the petitioner to testify, instead finding that the petitioner had waived the right to testify. (*See* ECF No. 33-17 (appellate brief).)

In its opinion, the Tennessee Court of Criminal Appeals first summarized the proceedings at the initial post-conviction hearings as follows:

---

[6] It is unclear whether these documents are in this court's record, or whether they would add anything to the numerous documents and affidavits that are in the record.

The trial court granted the Petitioner's motion to proceed *pro se* in the post-conviction proceeding. The trial court noted the Petitioner had had six attorneys during his direct appeal and post-conviction proceedings. It also released from the Petitioner's subpoenas, over the Petitioner's protest, a victim, the sentencing judge, and two attorneys who had previously been appointed for the Petitioner's post-conviction proceedings.

At the post-conviction hearing, trial counsel testified that he had been a practicing attorney since 1994. He said the Petitioner had been charged with nine counts of aggravated sexual battery. He stated that the Petitioner had rejected an initial plea offer of two concurrent ten- or twelve-year sentences "to serve" and that the Petitioner had wanted a range to be part of the plea agreement, thinking that he could perhaps receive a sentence toward the lower end of the range. He said the Petitioner's plea was not an "open" plea because the Petitioner was only facing a range from eight to twelve years for each count and the total sentence was limited to twenty years. He said he advised the Petitioner to accept the first plea offer, the "flat offer without the exposure of a sentencing hearing," because in trial counsel's experience, the sentencing judge would impose the maximum sentence possible. Trial counsel stated that this was in fact what had occurred at the sentencing hearing. He said he argued at the sentencing hearing that the State did not have proof of psychological or physical harm to the child, a factor the trial court found applicable and upon which it imposed consecutive sentences.

Trial counsel testified that he filed a motion to suppress the Petitioner's confession because he knew the Petitioner had been depressed and suicidal at the time of his confession. Referring to the Petitioner's transcripts, he said they did not have a hearing on the suppression motion, which he said had a strong basis, because the withdrawal of the suppression motion had been consideration for the plea agreement. He said the plea offer had three benefits. He stated that by withdrawing the motion and accepting the plea offer to plead *nolo contendere* to two counts of aggravated sexual battery, the Petitioner received in return (1) the State's dismissal of seven charges of aggravated sexual battery, (2) the State's promise not to refer the cases for prosecution in Texas, where the Petitioner said in his confession that some of the offenses had occurred, and (3) a limitation to his exposure to further prosecution. He stated that even if the motion had been heard and granted, the Petitioner would have had to contend with the victims' and witnesses' testimony at trial. In other words, he said the granting of the suppression motion would not have eliminated the evidence against the Petitioner that could have been presented at trial. He agreed with the Petitioner that the State's dropping the charges in seven counts was an inducement to accept the plea offer. He said the plea was not a "blind plea." He also stated that the Petitioner had rejected another plea offer with a service time of less than sixteen years.

Trial counsel testified that he never spoke to the Petitioner's daughter and the other victim, although he said he spoke with the Petitioner's wife and the mother of the other child. He said the Petitioner's wife told him that the Petitioner had drunk rum in the garage, that his daughter had had a neighbor spend the night, and that he had touched both girls. He said she told him what the victim had told her. He said that if they had taken the case to trial, he would have tried to speak with the two child victims, although he also noted he could have spoken with them only if they had permitted him to do so. Trial counsel said he did not think a trial date had been set. He said he did not interview the police officers involved in the case because, in his experience, they did not want to talk to defense attorneys about a case.

While acknowledging that he could not remember if a psycho-sexual evaluation pursuant to Tennessee Code Annotated section 39-13-705 (1997 & Supp. 1998) had been performed, counsel stated that it was his normal practice to have one performed in sex cases. When the Petitioner read a section from the plea hearing transcript reflecting

that one had not yet been performed, trial counsel agreed that must have been an [in]accurate statement. He said he thought perhaps they had waived the evaluation at the sentencing hearing. While acknowledging that the evaluation might have helped the Petitioner's case, he said that the issue he argued at the sentencing hearing had been consecutive or concurrent sentencing and that the evaluation had been irrelevant to that. He said that if a client insisted on being evaluated, he would move to continue the sentencing hearing for the evaluation to be performed. He also stated that he thought the absence of the evaluation had no effect on the trial court's determination. He said the psycho-sexual evaluation was not a condition of the plea agreement. The trial court took judicial notice of the fact that a psycho-sexual evaluation should have been performed pursuant to Code section 39-13-705. Trial counsel said that although he knew the State was seeking imposition of consecutive sentences, he did not file any documents addressing consecutive sentencing because he did not want the State to know ahead of time that trial counsel would argue that there was no proof of physical or psychological harm to the victims.

Trial counsel testified that he thought he would have read the arrest warrant before the preliminary hearing. He said he and the Petitioner discussed the Petitioner's confession on the plea date. He said the Petitioner both asked him questions about the statements and maintained that the statements were involuntarily given. Counsel said he believed the Petitioner, saying the Petitioner's state of mind made him more susceptible to pressure from the police. He said he did not think he told the Petitioner that the State would use the Petitioner's confession as the basis for the plea.

Trial counsel said the indictments were not multiplicitous because the counts alleged different acts. He did not remember if he had filed a bill of particulars in the Petitioner's case but stated that it was his practice to do so. He said he did not rely on the bill of particulars as a discovery tool. He said that it instead put him and the client on notice of the date of the offenses. He said it was not necessary to obtain a response to the motion for a bill of particulars before giving the Petitioner legal advice on whether he should accept a plea offer. He said he did not tell the Petitioner that the sentencing hearing was a "closed" hearing given that the victims were children.

Trial counsel said the Petitioner did not admit guilt at the plea. He said he and the Petitioner discussed the fact that his convictions could be used to enhance later sentences. He said it was his practice to have all clients read their plea agreements and to initial each paragraph confirming their reading of it. He said the Petitioner's initials were beside the paragraphs. Counsel stated he would not have presented the plea agreement to the court if counsel had not thought the Petitioner had made a knowing decision. He said he informed the Petitioner before the plea hearing that the sentence was to be served at one hundred percent. He stated that the trial court went over the terms of the plea agreement with the Petitioner but that the trial court did not "spell it out" that the Petitioner would have to register for the duration of his life with the sexual offender registry. He said the court informed the Petitioner of the need to register upon release. He said the Petitioner had a good understanding of the nature of the charges. Counsel then stated that the record presented to him by the Petitioner during the post-conviction hearing contained the answer to his motion for a bill of particulars and that they reviewed this document while discussing the plea offer the day of the plea hearing. He said that his practice was to show all documents and filings in a case to his client. He acknowledged that the materials presented by the Petitioner at the post-conviction hearing only addressed one count of the indictment. He said he could not remember if the State answered relative to the other counts.

Trial counsel testified that he did not review lesser included offenses when discussing the plea agreement with the Petitioner. He said he also did not think the trial court explained that if the Petitioner had proceeded to trial, he could have been convicted

of a lesser included offense of aggravated sexual battery. He said that the prosecutor and he spoke the day of the plea hearing and that the prosecutor told him that if the Petitioner did not accept the plea offer, the State would refer the child rape cases to Texas for prosecution. He said he told the Petitioner about the gravity of the Texas prosecutions in that the Petitioner would face child rape charges, a more severe charge, and a jury would sentence him.

On cross-examination, counsel testified that he had explained to the Petitioner the sentence range he faced. He said the Petitioner initialed the plea agreement, and he agreed that the Petitioner knew what he was reading. He said the Petitioner said he had read the document. Counsel said that in his opinion, the Petitioner knowingly and voluntarily entered his pleas. He said he had not used threats or coercion to obtain the Petitioner's pleas. He said he did tell the Petitioner that if he did not accept the pleas, he could be indicted in Texas and that if he accepted the pleas, seven of the nine charges would be dropped and he would not be referred for prosecution in Texas. He said he had been a practicing attorney for eight years at the time of the pleas. He said he had complete discovery and thought the next-door neighbor was a strong witness against the Petitioner. He said that when the trial court asked the Petitioner if he knew what he was doing by entering his pleas, the Petitioner answered affirmatively. He said the trial court told him that he could have a jury trial at which his counsel would cross-examine witnesses against him. He said he and the Petitioner discussed the Petitioner's right to testify at trial and the use of his confession against him. He said he left it to the Petitioner to decide to accept or reject the offers. In trial counsel's opinion, the Petitioner would have obtained a better outcome by accepting the first plea offer rather than the one he accepted, but he stated that the Petitioner "gambled and lost."

After a continuance, the Petitioner filed numerous additional exhibits to his petition. He did not testify. He argued to the court that the psycho-sexual evaluation was a promise in the plea agreement that the State did not perform. He said the evaluation would determine the sentence length. He asked for his pleas to be vacated and to have a trial.

The trial court dismissed the petition after finding that the Petitioner did not prove that he received the ineffective assistance of counsel or that he entered his *nolo contendere* pleas unknowingly or involuntarily. In its order, the trial court stated that it had reviewed in the interest of justice all the materials submitted by the Petitioner, although the trial court found that many of these documents were irrelevant to the Petitioner's post-conviction relief claims.

*Vaughn v. State* ("*Vaughn II*"), No. M2008-00193-CCA-R3-PC, 2009 WL 1684649, at *2–5 (Tenn. Ct. Crim. App. June 17, 2009), *perm. appeal denied* (Tenn. Dec. 14, 2009).

The appellate court ultimately affirmed in part, concluding that the trial court had not erred in rejecting the vast majority of the petitioner's claims for relief. The court further held, however, that "the trial court improperly limited the presentation of issues regarding the ineffective assistance of trial counsel, preliminary hearing counsel, and appellate counsel." *Id.* at *8 (citing *Henry v. State*, No. W2007-00679-CCA-R3-PC, 2008 WL 2901596, at *23 (Tenn. Crim. App. July 25, 2008) (holding that where a petitioner properly raised an ineffective assistance of appellate counsel claim in his petition but was precluded from raising it by the trial court, he was "entitled to have it considered by and determined by" the trial court in

the hearing on the petition); *Winton v. State*, No. E2006-02392-CCA-R3-PC, 2007 WL 2438112, at *3 (Tenn. Crim. App. Aug. 29, 2007) (holding that although the petitioner had raised the ineffective assistance of trial counsel on direct appeal, the trial court improperly precluded the petitioner from raising ineffective assistance of appellate counsel as a ground for post-conviction relief and that he must be allowed to present evidence of trial counsel's deficient performance for the appellate counsel claim)). The court therefore remanded for a new hearing to explore the issues of "the ineffective assistance of trial counsel at the sentencing, other than allegations of a closed sentencing hearing, the ineffective assistance of preliminary hearing counsel, and the ineffective assistance of appellate counsel." *Id.* at *8.

After remand, at Vaughn's request (*see* Motion, ECF No. 33-24, at 18), the trial court conducted a "pre-evidentiary" hearing on February 12, 2010, for the ostensible purpose of clarifying what testimony concerning which issues would be permitted at the post-remand hearing.[7] A second "pre-evidentiary" hearing was conducted on April 14, 2010, during which the parties again discussed what testimony would be permitted. The trial court told the petitioner that he could subpoena his appellate attorneys to testify, as well as any other "relevant witnesses." (ECF No. 33-25, at 37.) The court stated that it would hear evidence concerning "[i]neffective assistance of counsel at the preliminary hearing, ineffective assistance of counsel at the appellate level and possible sentencing issues – just possible." (*Id.* at 41.)

The transcript of the evidentiary hearing conducted on June 1, 2010 does not indicate that the petitioner was actually sworn in, but he did provide testimony and was cross-examined by the state prosecutor. (ECF No. 33-25.) There was no discussion on the record at the hearing regarding whether subpoenas had been issued, and no discussion of the fact that the petitioner's appellate and other attorneys were not present to testify, even though they had been subpoenaed for the previous hearings. In any event, the trial court again denied relief. (ECF No. 33-24, at 34.) The petitioner again appealed.

The Tennessee Court of Criminal Appeals affirmed this time, noting that the petitioner

> filed massive pleadings, complaining of a multitude of wrongs visited upon him, from the moment of his arrest through his direct appeal. The evidentiary hearing was lengthy and free-swinging, with the post-conviction court's concluding that the petitioner's claims were "incredible" and, ultimately, without merit. We agree. Doggedness cannot substitute for substance.

---

[7] The transcript of this hearing does not appear to be in the record, although the petitioner filed a motion in March 2010 and another motion in October 2010 asking for a copy of the transcript of the hearing. (ECF No. 33-24, at 22–23, 39–40.) It is unclear what was discussed at this hearing.

*Vaughn v. State* ("*Vaughn III*"), M2010-02191-CCA-R3-PC, 2014 WL 4104994, at *1 (Tenn. Ct. Crim. App. Aug. 21, 2014). In fact, as the court noted, the petitioner filed a 735-page "brief" in support of his second appeal.[8] The petitioner represented to the court that this brief comported with Rule 27(i) of the Tennessee Rules of Appellate Procedure, which limits the argument section of a brief to 50 pages, because the first 680 pages of his filing were simply an "Introduction to Argument" and not the argument itself. *Id.* The court rejected the petitioner's characterization of his brief but decided nonetheless, "in the interest of finality," to consider it. *Id.* After "carefully review[ing] the 192 pages of transcripts of the evidentiary hearing on the issues set out in [the appellate] court's 2009 opinion," the Tennessee Court of Criminal Appeals concluded that the petitioner was not entitled to relief on his claims of ineffective assistance of preliminary hearing counsel, trial counsel, or appellate counsel, as follows:

### I. Preliminary Hearing Counsel

The record on appeal does not include a copy of the preliminary hearing transcript. Therefore, there is no proof of what occurred at the preliminary hearing, or actions taken by counsel, save the petitioner's version at the second evidentiary hearing. He also overlooks the facts of his subsequently being indicted and entering pleas to those indictments. As we later will explain, his arguments fail to deal with the facts that the post-conviction court determined, and we affirmed, that he failed to show the results of the proceedings would have been different if his confession had been suppressed, that he would not have been indicted, or that he would not have entered pleas to two of the nine counts against him. The post-conviction court found that his testimony was "incredible." In view of this, plus the insufficiency in the appellate record, we conclude that the petitioner has failed to show either that general sessions counsel was ineffective or that he was prejudiced thereby.

### II. Trial Counsel

The petitioner made a number of claims as to the proceedings in the criminal court, following his being indicted. He argued that, apparently at the plea submission hearing, his lawyer had kept "stating about having nine counts; but those nine counts are under violation of multiplicity, they're in violation of double jeopardy. There could've been only two counts. He kept telling me nine counts." However, in our 2009 opinion, this court set out the testimony of the petitioner's trial lawyer, regarding the nine charges of aggravated sexual battery against the petitioner that, in exchange for the pleas, seven of these charges were dismissed; no charges would be referred to Texas for possible prosecution; and there would not be additional charges against him in Tennessee. Since these claims regarding the additional charges appear to be, at least, marginally related to those to be reviewed on remand, we have considered them and conclude that the petitioner has failed to show either that trial counsel was ineffective in this regard or that he was prejudiced thereby.

---

[8] The habeas petition filed in this court consists of 140 pages, plus an additional 60 pages of exhibits. The state-court record filed in this court by the respondent comprises over 3600 pages.

The petitioner also pursued a number of claims which were not within the issues which this court remanded to the post-conviction court. He argued that he "was not informed of [his] constitutional rights against incrimination[,] [t]hat's automatic reversal"; that trial counsel was ineffective at the sentencing hearing in "three separate ways"; that he was not subjected to a psychosexual evaluation; and that his statements to police were "inadmissible." As to the second point, this court noted in 2009 that trial counsel had testified at the first evidentiary hearing that "the withdrawal of the suppression motion was a condition of the plea agreement." Accordingly, we found that he had "opted to accept the pleas and did not pursue the use of the confession during his direct appeal." Thus, this court already has determined that this claim is without merit. As to the remainder of the claims, they appear to be woven together from nearly identical claims regarding proceedings in both general sessions and criminal court. Either previously, or in this appeal, we have considered each of these claims and find, as to each, that the petitioner has failed to prove either that counsel was ineffective or that he was prejudiced thereby.

Further, the petitioner argues that trial counsel was ineffective at the [plea] submission hearing because the petitioner was not informed by the trial court that lifetime reporting was required for the offense to which he was entering pleas of *nolo contendere*. However, this court agreed, in its 2009 review of the petitioner's first evidentiary hearing, that he understood the consequences of his pleas. Trial counsel testified at the 2009 evidentiary hearing that "the Petitioner knew of the registry requirement, although he admitted that the trial court did not tell the Petitioner that it was a requirement for the duration of his life after his release." Consequently, the post-conviction court found, and this court agreed, that the petitioner "had not shown that but for a claimed deficient performance of counsel, he would not have entered his pleas." Thus, as to this claim, the petitioner attempts to relitigate an issue already concluded to be without merit. We decline to revisit this matter.

The claim that the trial court should have begun sentencing consideration at the minimum for the offense, rather than at the midpoint, has previously been determined in favor of the State. Further, this court determined in 2009 that the petitioner's several claims regarding his allegedly inadmissible confession were without merit. Earlier, he had accepted the plea offer without exception and had not challenged the statements during his direct appeal. Even if he had done so successfully, by the analysis of this court in our 2009 opinion, the petitioner "would have been confronted at trial with the witnesses' testimony" and had not shown "a reasonable probability that but for the use of the confession, he would not have entered his pleas." Thus, this claim already has been determined against the petitioner.

As we understand, the petitioner additionally complains that the State did not provide responses to his bill of particulars, filed before his pleas had been entered. This issue was not one of those remanded for the post-conviction court's consideration, and, thus, it may not be raised in this appeal. In this regard, the petitioner may not argue the claim in this appeal that trial counsel was ineffective for not raising the claim that the trial court had lacked jurisdiction in the matter because of "the fact that the sleeping too close was in Texas," not Tennessee. This, also, was not one of the remanded issues and may not be considered by this court.

### III. Appellate Counsel

As to possible claims against appellate counsel, the petitioner has failed, as best we understand his testimony at the second evidentiary hearing, to identify any alleged deficiencies. Accordingly, we have nothing to consider in this regard.

*Vaughn III*, 2014 WL 4104994, at *2–4 (internal citations to *Vaughn II* omitted).

Vaughn filed his timely § 2254 petition in this court in January 2015. (ECF No. 1.)

II.      ISSUES PRESENTED FOR REVIEW

As an initial matter, the court notes that the petitioner insists, repeatedly and emphatically, that he is entitled to an evidentiary hearing and to present evidence to this court that was not presented in the state courts. The court will address this as a separate issue, below.

Otherwise, the petitioner asserts five separate "grounds" for relief, the first ground being that "preliminary hearing counsel, bond counsel, trial/plea counsel, and direct appeal counsel[] were all ineffective in their duties and responsibilities to Vaughn." (ECF No. 1, at 12.) Under this "ground," the petitioner raises, by the court's count, 64 subclaims of ineffective assistance of counsel,[9] including that his pretrial and trial attorneys were ineffective for:

(1) allowing Vaughn to be sentenced illegally without having undergone the statutorily required psycho-sexual mental health evaluation prior to sentencing;

(2) allowing the prosecutor to breach his obligation under the plea agreement to have the mental-health evaluation performed as he promised to do;

(3) inducing Vaughn to enter into the open plea agreement by ensuring him that he would undergo the statutorily mandated mental-health evaluation prior to sentencing (*id.* at 14);

(4) allowing Vaughn to be sentenced even though the pre-sentence report did not contain the mental-health evaluation as required by law;

(5) failing to get the indictment dismissed at sentencing based on the prosecutor's failure to have Vaughn undergo the statutorily-required and court-ordered mental-health evaluation;

(6) allowing the petitioner's coerced and inadmissible statements to police to be used against him at sentencing to increase his prison term to twenty years;

(7) inducing Vaughn to enter a plea by failing to inform him of all the facts relevant to his decision to enter a plea, including that his statements to police could be used against him at sentencing;

(8) failing to proceed to argue the motion to suppress Vaughn's statements to police and to have that motion decided by the court before having his client enter a plea agreement;

(9) allowing Vaughn's statements to police to be admitted into evidence at sentencing, over his objections, without first requesting "testing" of their admissibility;

(10) failing to object to the prosecutor's using Vaughn's statements to police to compel Vaughn to agree with what was in the statements, which resulted in the court imposing the maximum sentence permitted under the plea agreement;

---

[9] The court's enumeration does not correspond precisely with the petitioner's. The habeas petition actually lists 74 ineffective-assistance claims, some of these with numerous subparts, but it does not contain claims enumerated 1, 2 or 3. In addition, many of the claims are duplicative and, conversely, several enumerated claims in the petition actually contain more than one claim.

(11) allowing Vaughn's statements to police to be admitted against Vaughn at sentencing, "contrary to statute law, making Vaughn's sentence illegal and his plea void because his plea was to a sentence that is illegal and void" (ECF No. 1, at 21);

(12) allowing Vaughn's statements to police to be admitted against Vaughn at sentencing because they were "prejudicially used to apply enhancements (enhancements he was never warned about at his plea), in order to deny his direct appeal" (*id.*);

(13) failing to challenge the admissibility of the statements Vaughn made to police on the basis that Vaughn was seized in violation of the Fourth Amendment, his arrest warrant was defective, the affidavit for the warrant was defective, he did not receive proper *Miranda* warnings, the statements were recorded deceptively, the police knew that Vaughn's state of mind at the time of questioning was "questionable" (*id.* at 17);

(14) failing to object to the prosecutor's misconduct in handing out Vaughn's statements to the State's witnesses, which gave rise to a substantial possibility that the witnesses' testimony would be changed;

(15) failing to object to the prosecutor's "using the statements and psychological coercion to compel Vaughn to agree with what was in the statements" (ECF No. 1, at 20);

(16) failing to object to the use of hearsay and inadmissible evidence at the preliminary hearing on probable cause, upon which the Grand Jury relied in reaching its decision to issue the Indictment;

(17) failing to adequately inform Vaughn of his rights at the preliminary hearing or what the hearing was for;

(18) failing to object to procedural improprieties at the preliminary hearing;

(19) failing to follow through with his motion to get the petitioner's bond reduced, on the basis of which Vaughn was severely prejudiced because, if he had been out on bond, he would have had a different trial counsel and "the whole proceedings would have been different" (ECF No. 1, at 27);

(20) failing to object to the indictment on the basis that it was multiplicitous and in violation of double jeopardy, and misleading Vaughn into believing he could be prosecuted and convicted on all 9 counts and could receive over 100 years of time if he were sentenced consecutively on them all, when in reality he could only have been convicted on a maximum of 2 and received a maximum sentence of 24 years;

(21) doing "nothing about the indictments" despite their lack of specificity and detail and, although trial counsel filed a motion for a bill of particulars, he did not require a full response to the motion or insist that it be heard prior to the plea, as a result of which the plea was not knowing and voluntary (*id.* at 30);

(22) failing to have the indictment dismissed based on the prosecutor's failure to answer the bill of particulars;

(23) failing to have the indictment dismissed based on "improperly joined offenses being in the same indictment" (*id.* at 32);

(24) failing to object on the basis that Vaughn was "never properly processed on counts 2–9, he was never arrested, booked, brought before a magistrate, or anything else on those counts, so the court had no jurisdiction to accept the plea on counts 2–9" (*id.* at 32);

(25) failing to object to the indictment based on the dates provided for the charges, and

then failing to notify the petitioner of amended dates until the day of the plea, which did not give him time to check his alibi before pleading to charges 2 through 9;

(26) allowing the indictment to be amended to change an essential element of 8 of the 9 counts (the date) without notice to the petitioner or resubmission to the grand jury, rendering the plea void;

(27) allowing the indictment to be amended from asserting a precise date to an indefinite date, which "should have caused Tennessee to lose its jurisdiction because Vaughn and the alleged victim . . . only lived in Tennessee for 14 months prior to the allegations" (*id.* at 34);

(28) counseling Vaughn to plead to the original indictment but then actually permitting Vaughn to enter a plea to the second indictment;

(29) tricking Vaughn into pleading based in part on the prosecutor's agreement to drop seven counts, even though 4 or 5 of those 7 did not take place in Tennessee and thus could not have been prosecuted in Tennessee;

(30) failing to investigate the allegations by interviewing or even attempting to interview the child victims or their mothers regarding the children's allegations, as a result of which he failed to discover that victim L.O. would have denied the abuse allegations;

(31) counseling Vaughn to take the plea when the evidence available would have been insufficient to support a verdict against him;

(32) lying on the stand during one of the post-conviction hearings, concerning the alleged victim of counts 2–9;

(33) failing to object to the fact that the petitioner's sentencing hearing was closed to the public and remained closed after the underage witness testified, so the petitioner's supporters were not able to attend;

(34) "allowing" the petitioner to be sentenced illegally "because he was not sentenced to supervision for life";

(35) failing to object to the inaccuracy of the judgment based on its failure to include the lifetime-supervision requirement;

(36) allowing Vaughn's police statements, sentencing statements, and presentence report statements to be used against him at sentencing to increase his sentence to the maximum permitted under the plea agreement;

(37) incorrectly telling the court at sentencing that the sentencing range "started" at 10 years rather than 8, leading Vaughn to get 4 more years than he might have otherwise;

(38) failing to inform Vaughn prior to his taking plea about the factors the state could introduce to enhance his sentence;

(39) never informing Vaughn he would automatically be considered for consecutive sentencing;

(40) allowing the judge to enhance the sentence using enhancements Vaughn was never warned about;

(41) allowing a sentencing cap to be imposed on open plea sentencing when the cap was actually only appropriate under military law;

(42) failing to address "police misconduct issues";

(43) failing to address "prosecutor misconduct issues";

(44) failing to address "judicial misconduct issues" and, in particular, not objecting to the bias exhibited by the judge when he sentenced the petitioner to the maximum possible sentence under the open plea;

(45) not informing Vaughn of his right to remain silent and that statements he made at the plea and in the presentence report could be used against him at sentencing;

(46) not informing Vaughn that he would have to answer questions and that his answers could be used against him at sentencing;

(47) failing to inform Vaughn of the elements of the charges against him;

(48) failing to inform him of possibility of being found guilty by a jury of lesser included offenses;

(49) failing to inform him that he would have to register for the rest of his life as a sex offender;

(50) failing to inform him any sentence would be served 100%;

(51) failing to tell him witnesses could testify at sentencing and their testimonies used to enhance his sentence;

(52) failing to inform him that sex-offender treatment could be added to his sentence;

(53) allowing the judge to make no inquiry as to the factual basis for the plea;

(54) allowing the judge not to inquire about whether the plea was the result of discussions with and promises by the prosecutor;

(55) failing to inform the petitioner that a no-contest plea was basically the same thing as a guilty plea;

(56) failing to provide legal advice regarding whether the petitioner should take the plea;

(57) failing to object to the entry of the plea on the basis that the order the judge signed does not have a case caption or any name on it to indicate in whose case it was being entered; and

(58) failing to object to the plea on the basis that the court lacked jurisdiction over the person or subject matter.

The petitioner further claims that his appellate attorneys were ineffective for:

(59) failing to raise the issues concerning the improper preliminary hearing and the invalidity of the indictment on appeal;

(60) failing to raise claims on appeal concerning the insufficiency of the evidence and the possibility of innocence;

(61) failing to raise the issue of the closed hearing and other sentencing errors on appeal, including unfair bias toward the State, illegal sentence, and the use of enhancements about which the petitioner had never been warned, and the fact that the petitioner never underwent a mental health evaluation;

(62) failing to contest the questionable conduct by the police, prosecutor, and judge;

(63) failing to raise claims based on the involuntary and unknowing nature of the plea; and

(64) failing to argue that the accumulation of errors established that he was deprived of the effective assistance of counsel.[10]

The petitioner's other grounds for relief are as follows:

Ground Two: that the plea was not knowing and voluntary (for many of the same reasons raised in support of the ineffective-assistance claims);

Ground Three: that the sentencing hearing was closed in violation of the petitioner's right to a public trial guaranteed by the Sixth Amendment;

Ground Four: that the sentence is illegal and void because it is contrary to state law in at least three ways: (1) the petitioner did not receive a mental-health evaluation as required by statute; (2) he was sentenced using evidence obtained in violation of the constitution; and (3), he "was not sentenced to lifetime supervision" (ECF No. 1, at 119);

Ground Five: that the petitioner is being held in violation of his rights to due process and equal protection because the State of Tennessee lacks jurisdiction over him; and

Ground Six: that the prosecution violated *Brady* by suppressing information and evidence material to guilt, punishment and plea decisions, including (1) withholding the bill of particulars; (2) withholding the date of the offenses for counts 2 through 9; (3) withholding the court's lack of jurisdiction; (4) withholding the state's intention to seek sentence enhancements until after Vaughn entered the open plea agreement; and (5) withholding the state's intention to seek consecutive sentencing.

## III.     STANDARD OF REVIEW

### A.     Exhaustion and Procedural Default

A federal district court will not entertain a petition for the writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine designed to promote comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling

---

[10] The court refers below to the ineffective-assistance claims, in accordance with the enumeration provided here, as "IAC Claim No. ___."

legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once a petitioner's federal claims have been raised in the highest state court available,[11] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). Moreover, if a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted (because it was not presented to a state court for review), and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

---

[11] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

**B.      Fully Exhausted Claims**

Even when a petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 raises claims that have been properly exhausted in the state courts, this court's review of the state court's resolution of those issues remains quite limited. First, this court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, a claim asserting only a violation of state law, even if fully exhausted, is not cognizable in federal habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Further, under § 2254(d),

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by the state court's adjudication of the petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, this court must presume the correctness of state-court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

With these principles in mind, the court will turn to the examination of the claims raised in Vaughn's petition for habeas relief.

**IV.      DISCUSSION**

**A.      Ground One—Ineffective assistance of Counsel**

***i.      Standard of Review of Ineffective-Assistance Claims***

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that, in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment, a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1), *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington v. Richter*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

*Id.* (internal quotation marks and citation omitted). In short, this court's review of an ineffective-assistance claim in a habeas corpus case is not *de novo* but is instead subject to the limitations imposed by AEDPA, discussed above.

### ii. Ineffective Assistance of Trial Counsel

The plaintiff's myriad claims of ineffective assistance of trial counsel can be classified generally as falling into seven categories in which trial counsel's performance was allegedly constitutionally deficient:

(a) failure to object to the indictment (IAC Claim Nos. 20 through 27);

(b) failure to fully litigate the motion to suppress (IAC Claim No. 8);

(c) failure to ensure that the plea was knowing and voluntary (IAC Claim Nos. 7, 27 through 31,

34, 35, 38, 39, and 45 through 58);

(d) failure to ensure that the petitioner received a psycho-sexual evaluation prior to sentencing (IAC Claim Nos. 1 through 5);

(e) failure to ensure the fairness of the sentencing hearing (IAC Claim Nos. 6, 9 through 17, 33, 36, 37, 40, and 41);

(f) lying during the post-conviction hearing (IAC Claim No. 32); and

(g) failing to address police-, prosecutorial- and judicial-misconduct issues (IAC Claim Nos. 42 through 44).[12]

### Unexhausted Claims

The first question for this court is whether the petitioner's claims were fully exhausted in the underlying state proceedings. The claim that the trial attorney was ineffective because he lied on the stand during the post-conviction hearing (IAC Claim No. 32) was raised in the first post-conviction appeal, but it was not raised in the initial-review post-conviction petition—because it was at the hearing on that petition when the attorney allegedly lied. In any event, this claim is not cognizable on habeas review, because counsel's conduct during post-conviction, while it admittedly might affect the plaintiff's ability to prove his claims of ineffective assistance of counsel, has no bearing on the attorney's conduct during the trial.

As for the trial attorney's alleged failure to address misconduct by police, prosecutors, and the judge (IAC Claim Nos. 42–44), the petitioner did not raise these as ineffective-assistance claims in his amended post-conviction petition. Instead, the petitioner raised stand-alone substantive due-process claims of police, prosecutorial, and judicial misconduct. (*See* Am. Post-Conviction Petition, ECF No. 33-12, at 81–87.) Likewise, in his first post-conviction appellate brief, the petitioner argued that the trial court had erred in failing to make proper findings of fact and conclusions of law addressing the petitioner's claims of police, prosecutorial, and judicial misconduct (*see* ECF No. 33-17, at 69), but he did not argue that trial counsel was ineffective for failing to raise the claims. Thus, even if the petitioner arguably raised these (and every other conceivable claim) in his 767-page second post-conviction appellate brief, the issues had already been waived by that time.

Similarly, the petitioner did not fully exhaust his claim that trial counsel was ineffective for not

---

[12] IAC Claim Nos. 16 through 19 allege the ineffective assistance of preliminary-hearing counsel and are addressed separately below.

"allowing" him to be sentenced illegally "because he was not sentenced to supervision for life. (IAC Claim No. 34, Habeas Petition, ECF No. 1, at 46.) In his amended post-conviction petition, the petitioner alleged that he "was not informed by the trial court, nor did his judgment contain, the mandatory lifetime community supervision as required by law, therefore it renders his sentence illegal and void." (ECF No. 33-12, at 77.) He did not frame the issue as an ineffective-assistance claim, and he did not question his attorney about it during the post-conviction hearing. Likewise, although he alleged in his post-conviction brief that his attorney had not "inform[ed] [him] about the lifetime supervision required by law" (ECF No. 33-17, at 42 (citation omitted)), he did not frame the issue then as an ineffective-assistance claim or one related to the validity of his plea. Instead, he asserted that the attorney's failure to inform him about it and the trial court's failure to include it in the judgments rendered "his sentence . . . illegal and void." (*Id.*).

In other words, the petitioner did not fully and fairly present these claims to the highest available state court in Tennessee in the same form in which they are presented to this court. State procedural rules, specifically the one-petition rule, Tenn. Code Ann. § 40-30-102(c), and the one-year statute of limitations, Tenn. Code Ann. § 40-30-102(a), bar the petitioner from asserting the claims in the state courts now. As a result, the claims are deemed to be exhausted (because no avenue for raising the claims in state appellate court remains) but procedurally defaulted for the purposes of federal habeas review.

As set forth above, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). In this case, the petitioner does not assert cause for the procedural default or acknowledge that the claims are procedurally defaulted. He states unequivocally that he "exhausted state remedies" regarding all his ineffective-assistance claims. (ECF No. 1, at 69.) The court finds that these claims are barred from review as procedurally defaulted.

### Exhausted Claims

The other five categories of claims of ineffective assistance of trial counsel were for the most part, though not necessarily in all of their permutations, exhausted in the state court proceedings. Specifically, the petitioner argued in his first post-conviction appellate brief that:

(a) counsel was ineffective for failing to attack the indictment on the basis that it was multiplicitous (or "multiplicious") and for failing to require a more detailed bill of particulars (Issue I(e), ECF No. 33-17, at 32, 34);

(b) counsel was ineffective for failing to pursue the motion to suppress and instead urging his client to enter a plea without informing him that all of his statements could be used against him if he entered a plea (Issue I(d), ECF No. 33-17, at 28);

(c) counsel failed to ensure that the plea was knowing and voluntary insofar as he coerced the petitioner into pleading guilty by threatening him with prosecution in Texas if he did not; failed to interview or even try to interview the mother or the victim himself, thus rendering the plea involuntary (Issue I(c), ECF No. 33-17, at 26); failed to explain the plea form or to ensure that the petitioner understood the nature of the charges against him; told the petitioner just to agree with everything the judge said during the plea hearing; and failed to explain to the petitioner what factors would be considered at sentencing if the petitioner took the plea, that he would have to answer questions about the charges in open court, that his sentence could be enhanced based on prior convictions and on charges he was not convicted of, that he would have to serve his sentence at 100%, that he would have to register for life as a sex offender, and that a no-contest plea was essentially the same as a guilty plea (Issue I(g), ECF No. 33-17, at 40–41);

(d) counsel was ineffective for failing to ensure that the petitioner underwent a mental health (or psycho-sexual) evaluation in connection with the plea, prior to sentencing, which rendered the plea involuntary and the sentencing unfair (Issue I(a), ECF No. 33-17, at 19);

(e) the attorney's conduct at sentencing was deficient but the post-conviction court erred in refusing to permit the petitioner to present any evidence about ineffectiveness at sentencing, including about the court's decision to close the sentencing hearing (Issues I(b), ECF No. 33-17, at 25, and I(f), ECF No. 33-17, at 37); and

In considering these claims, the Tennessee Court of Criminal Appeals summarized the petitioner's trial attorney's testimony during the post-conviction hearing and set forth the standard of review, first noting that the petitioner in post-conviction proceedings has the burden of proving the factual grounds for relief by clear and convincing evidence, *Vaughn II*, 2009 WL 1684649, at *6 (citing Tenn. Code Ann. § 40-3-110(f)), and then correctly setting forth the standard of review established by the Supreme Court for reviewing claims of ineffective assistance of counsel. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). The court then declined relief, as discussed below. The question for this court is whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### (a) The Multiplicitous Indictment

The Tennessee Court of Criminal Appeals found that, although the trial court did not make

specific factual findings as to this claim, the petitioner did not establish either deficient performance or prejudice resulting from trial counsel's failure to object to the indictment on the basis that it was multiplicitous. Trial counsel testified that he and the petitioner reviewed the bill of particulars furnished by the state before the petitioner entered his plea and that the petitioner had a good understanding of the charges against him. The attorney also stated that charges 2 through 9, all involving L.O., each involved a different act. The court noted that "[t]he Petitioner did not present evidence that would preponderate against the trial court's general accrediting of trial counsel's testimony over that of the Petitioner." *Vaughn II*, 2009 WL 1684649, at *10. The court also noted that, because charges 3 through 9 were dismissed as a consequence of the petitioner's plea agreement, the petitioner failed to establish prejudice arising from his attorney's failure to object to the indictment.

The state court's conclusions were not contrary to and did not involve an unreasonable application of clearly established federal law, nor were they based on unreasonable factual determinations. Regarding the petitioner's various other claims based on his attorney's failure to object to the indictment, these claims were implicitly rejected by the state courts and this court too finds them to be utterly without merit. The charges were not improperly joined in one indictment. Because the counts were not duplicative, there was no double-jeopardy issue. As for the prosecutor's failure to provide a bill of particulars or to pin down the dates for charges 2 through 9, these charges were based solely upon the petitioner's confession to multiple incidents of molesting victim L.O., such that he alone had any basis for estimating the dates on which the offenses occurred. Although the petitioner told police that only three or four of the incidents had taken place in Tennessee, it is commonplace for one alleged "instance" of molestation to give rise to more than one charge in an indictment. And insofar as the petitioner asserts that the state of Tennessee lacked jurisdiction over any crimes committed in Texas, the indictment itself only refers to acts committed within Tennessee.

The petitioner is not entitled to relief on the basis that his counsel was ineffective for failing to seek dismissal of the indictment.

### *(b) The Motion to Suppress*

Regarding the motion to suppress, the Tennessee Court of Criminal Appeals noted that the petitioner had "opted to accept the pleas and did not pursue the use of the confession during his direct

appeal." *Vaughn II*, 2009 WL 1684649, at *9. Based on those facts as well as trial counsel's testimony, the court concluded that "withdrawal of the suppression motion was a condition of the plea agreement." *Id.* The state court's conclusion did not involve an unreasonable factual determination based on the record before the court. Moreover, because the petitioner entered a plea, he cannot establish prejudice arising from his counsel's supposed abandonment of the motion to suppress.

### (c) Failure to Ensure the Plea Was Knowing and Voluntary

The petitioner makes a number of allegations in support of his claim that his trial attorney failed to ensure that his plea was knowing and voluntary: that counsel failed to explain all the facts relevant to the petitioner's decision to enter the plea, including that his statements to police could be used against him at sentencing (IAC Claim No. 7); that counsel "tricked" him into pleading based in part on the prosecutor's agreement to drop counts 3 through 9 of the indictment, even though 4 or 5 of those 7 did not take place in Tennessee and could not have been prosecuted in Tennessee (IAC Claim No. 29); that counsel failed to investigate the claims or attempt to interview the child victims and therefore failed to discover that L.O. would have denied the abuse allegations (IAC Claim No. 30); that the attorney counseled Vaughn to take the plea even though the evidence would have been insufficient to support a jury verdict on the claims involving L.O. (IAC Claim No. 31); that counsel failed to make sure he was aware that he would be subject to lifetime registration as a sex offender (IAC Claim No. 49); that counsel failed to inform Vaughn of all the factors the state could introduce to enhance his sentence (IAC Claim No. 38) and failed to inform him that he would have to serve any sentence at 100% (IAC Claim No. 50), among other less substantial claims. The claim based on these allegations was fully exhausted in the state courts.

The Tennessee Court of Criminal Appeals summarized the testimony elicited from trial counsel at the hearing and ruled as follows on the petitioner's claim that counsel was ineffective for failing to insure that the plea was knowing and voluntary:

> The Petitioner contends that the trial court erred in finding the Petitioner had not proven that he received the ineffective assistance of counsel and that his *nolo contendere* pleas were unknowingly and involuntarily entered. He cites as examples of the alleged ineffective assistance of counsel . . . plea hearing errors. . . .

### C. Potential Charges in Texas

> The Petitioner claimed his counsel coerced him into entering his two *nolo contendere* pleas because trial counsel told him that he could be prosecuted for child rapes in Texas if he did not accept the plea offer. He also states that his attorney was

ineffective in not interviewing the two victims but instead relying on their statements. The State responds that the Petitioner admitted the conduct at the plea hearing, that counsel testified that it was the Petitioner's decision whether to accept the plea, and that the Petitioner has not demonstrated he received the ineffective assistance of counsel.

The trial court stated that the Petitioner had not demonstrated either of the *Strickland* prongs. We agree. Entering a plea to avoid facing a greater number of charges at trial in Tennessee and to avoid being referred for prosecution in another state is a valid reason to accept a plea agreement. Trial counsel testified that not only was the Petitioner facing nine counts of aggravated sexual battery in Tennessee, the Petitioner potentially faced several counts of child rape in Texas, which trial counsel said used a jury for sentencing. The Petitioner made no showing of deficient performance or prejudice, both of which are required to argue ineffective assistance of counsel successfully. The Petitioner is not entitled to relief.

### D. Involuntary Confession

The Petitioner claims in his brief that he would not have accepted the plea offer had he known the claimed coerced confession would be used as the basis for his plea. He insists that his attorney told him the statement would not be used against him if he accepted the plea agreement. The State contends the Petitioner has made no showing that the statement would have been suppressed had he proceeded to trial.

Although the trial court did not make findings of fact regarding the suppression of the Petitioner's confession, the record supports the trial court's determination that Petitioner failed to show deficient performance and prejudice to his case. Although trial counsel testified that there was a strong basis upon which to suppress the Petitioner's statement, he also stated that the withdrawal of the suppression motion was a condition of the plea agreement, which allowed the Petitioner to enter *nolo contendere* pleas to two of the nine charged offenses and not to be referred for prosecution in Texas. The evidence reflects that trial counsel told the Petitioner of an earlier plea offer and that the Petitioner seemed to hope, in spite of trial counsel's advice to the contrary and experience with the sentencing judge, that he would receive a sentence in the lower part of the range. The record reflects the Petitioner opted to accept the pleas and did not pursue the use of the confession during his direct appeal. Furthermore, trial counsel said that even if the confession had been excluded, the Petitioner would have been confronted at trial with the witnesses' testimony. The Petitioner has not shown that the result of the proceeding would have been different had trial counsel succeeded in preventing the confession from being used. He also has not shown a reasonable probability that but for the use of the confession, he would not have entered his pleas. He is not entitled to relief. . . .

### F. Plea Hearing

The Petitioner claims trial counsel was ineffective regarding his plea. He alleges that trial counsel did not tell him about the plea or the plea form and instead simply told him to initial the form's paragraphs. He states it was error for the trial court not to inform him of the lesser included offenses for which he could have been convicted had he elected to go to trial. He also says his attorney breached his duty of loyalty to him by discussing the case with another attorney, the employer of a State's witness and the eventual plaintiff's attorney in a civil suit against the Petitioner for his conduct. The State contends that the trial court properly found the Petitioner had not demonstrated deficient performance and prejudice, that the Petitioner had not demonstrated he would have gone to trial if he had been informed of the lesser included offenses, and that the Petitioner had not demonstrated the existence of a conflict of interest between his trial counsel and the Petitioner's case.

The trial court found that the Petitioner was aware of the consequences of the plea. The evidence does not preponderate against the trial court's finding. Trial counsel testified that he and the Petitioner discussed the plea agreement, the service time, and the benefits of the agreement. Counsel said the Petitioner said he had read the agreement. The evidence reflects that the Petitioner wrote his initials next to the paragraphs of the plea agreement. Counsel also testified that the Petitioner knew of the registry requirement, although he admitted that the trial court did not tell the Petitioner that it was a requirement for the duration of his life after his release and that neither he nor the trial court told the defendant about the lesser included offenses to aggravated sexual battery.

The trial court properly determined that the Petitioner had not shown deficient performance and prejudice regarding the Petitioner's knowledge of the consequences of plea. The Petitioner has not shown that but for a claimed deficient performance of counsel, he would not have entered his pleas. He is not entitled to relief.

The Petitioner has also not produced evidence of a conflict of interest or shown that knowledge of the lesser included offenses would have caused him to go to trial on nine counts of aggravated sexual battery. Trial counsel testified that he had spoken with the victims' mothers and that he thought one of the witnesses was particularly strong. He also said the Petitioner had admitted his conduct in a confession, which he tried to suppress. The Petitioner has not indicated which aspects of the testimony either at the sentencing hearing or at the plea hearing would lend credence to his claim that he did not commit the crime or would have been convicted of a lesser crime. The Petitioner is not entitled to relief.

The Petitioner has likewise not provided support for his claim that trial counsel discussed his case with the attorney employer of a State's witness who became the plaintiff's attorney in a suit seeking damages from the Petitioner for his conduct. He is not entitled to relief on this claim.

*Vaughn II*, 2009 WL 1684649, at *5–11 (internal citations omitted).

After remand for consideration of the claims related to sentencing and other issues, the Tennessee Court of Criminal Appeals addressed several of these claims a second time, ruling again in favor of the state on the petitioner's claims relating to his plea agreement, the motion to suppress, and the plea hearing. *Vaughn III*, 2014 WL 4104994, at *3.

This court has reviewed the entire record and finds that the state court's decision that the trial attorney adequately informed the petitioner about the consequences of the plea was not, for the most part, based upon an unreasonable determination of the facts. However, the Tennessee Court of Criminal Appeals clearly extrapolated somewhat when it found that trial counsel had "testified that the Petitioner knew of the registry requirement." *Vaughn II*, 2009 WL 1684649, at *11. In fact, when the petitioner asked his attorney, "Was I informed about a mandatory lifetime offender registration?" The attorney did not respond affirmatively. (ECF No. 33-14, at 57.) He stated:

I believe the Judge took – when I reread the plea agreement, the Judge went over that,

> Judge Wyatt. . . He went over, the Judge – when he went over your rights. I noticed that when I skimmed through the plea bargain. The Court went over that. He asked if you understood that and, I believe, your answer was, yes, sir. . . [But] I don't think he spelled it out.

(ECF No. 33-14, at 57.)

The judge did not spell out the requirement. At the plea hearing, as the petitioner pointed out when he questioned his attorney on this subject, Judge Wyatt referenced the registry requirement without explaining it, but the petitioner agreed he understood:

> THE COURT:  All right. Mr. Vaughn, you're here this afternoon, now, getting ready to plead . . . no contest to two counts of Aggravated Sexual Battery. . . .

> And there will be two felony convictions that will be sexually oriented. *You'd have to sign up with the sexual registry and different other things*, such as that, when and if you are released at some point in the future. And do you understand that so far?

> THE DEFENDANT:       Yes, sir.

(ECF No. 33-2, at 6–7 (emphasis added).)

In light of this evidence, it appears that the state court's factual determination that the petitioner was adequately informed about the lifetime registry requirement was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The petitioner unequivocally testified via affidavit that he did not know about that requirement and would not have entered a plea if he had. The petitioner's attorney did not rebut those statements, and the plea colloquy indisputably establishes that the trial court did not fully explain the requirement.

Even if the Court's conclusion that trial counsel (or the trial court) adequately informed the petitioner about the registry requirement was based on an unreasonable determination of the facts, it nonetheless appears that the attorney's apparent oversight in this regard was not sufficiently prejudicial that it rendered the plea unknowing and involuntary. In 2010, the Tennessee Supreme Court held that that the sexual offender registry requirement is a "remedial and regulatory measure" rather than a punitive measure, one that the Tennessee legislature clearly intended to apply retroactively even to inmates who had already pleaded guilty or been convicted by a jury of sexual offenses by the time it was implemented or amended. *Ward v. State*, 315 S.W.3d 461, 468–69 (Tenn. 2010). Because the registry requirement was not a punitive consequence of pleading guilty and would have been applied to the petitioner even if he had pleaded guilty the day before the statute's enactment, the court finds that the trial attorney's failure

to adequately inform his client about the measure was not sufficiently prejudicial to warrant reversal of the state court's decision. However, because reasonable minds could reach a different conclusion, the court will grant a certificate of appealability as to this claim.

### (d) Failure to Obtain Psycho-Sexual Evaluation

The trial court credited trial counsel's testimony that he thought he and the petitioner waived the psycho-sexual evaluation, that the paramount sentencing issue would be whether the sentences for both charges were concurrent or consecutive rather than the actual length of the sentences, and that, although a mental health evaluation might have helped the petitioner, it would have been irrelevant to the issue of consecutive versus concurrent sentences. The attorney also testified that he believed he would have moved to continue the sentencing to accommodate an evaluation if his client had insisted upon having it done.

In reviewing this claim, the appellate court noted that the petitioner "failed to present testimony at the hearing to rebut his counsel's claim." *Vaughn II*, 2009 WL 1684649, at *6. The court therefore concluded that the petitioner had failed to show that he would not have entered the plea but for the promise that he would receive the mental health evaluation or that his counsel's failure to obtain the evaluation resulted in a longer sentence for the petitioner. *Id.* The petitioner tried to raise this claim again, after the remand, during the second evidentiary hearing at which he did testify. The Tennessee Court of Criminal Appeals considered this issue to be outside the scope of the remand. *Vaughn III*, 2014 WL 4104994, at *3.

This court is frankly troubled by the course of proceedings in the trial court. The petitioner is clearly had difficulty working with appointed counsel, but he was also ill-equipped to proceed *pro se*. At the post-conviction hearing, as discussed above, the petitioner called his trial attorney to testify but was admonished that he could not argue or testify himself during his attorney's testimony, and all his other witnesses were dismissed as having been inappropriately subpoenaed. The hearing was then continued to a later date. On his third trip to court, the petitioner introduced a written "sworn statement" and notified the court that he "put in a verbal argument just in case I wasn't allowed to verbally argue everything today." (ECF No. 33-15, at 4.) Later, the state's attorney indicated that he had no need to call Mr. Vaughn to testify. (*Id.* at 9.) The court did not ask Mr. Vaughn if he wanted to testify or even indicate to him at that

time that he was permitted to testify. Mr. Vaughn appeared to assume that he did not need to testify and repeatedly asked for reassurance that his written statement would be admitted into evidence. (*See, e.g.*, ECF No. 33-15, at 5 ("Everything that I am presenting to you it will be preserved for the record; is that correct?").)

In his first post-conviction appeal, the petitioner challenged the trial court's failure to allow him to testify and implicit conclusion that he had waived his right to testify. The Tennessee Court of Criminal Appeals expressly rejected the claim:

> [T]he evidence does not support the Petitioner's claim that he was denied his right to testify. The post-conviction hearing transcript reflects that the *pro se* Petitioner chose not to testify and that the State expressed no need to cross-examine the Petitioner. The transcripts reveal that the Petitioner tried to testify while questioning his former attorney. The trial judge instructed the Petitioner several times that he would have to testify to tell his side of the story. The Petitioner, after obtaining a continuance, opted not to testify. Instead, he submitted several hundred more pages to the record, pages which repeat the same claims as in the *pro se* petition and *pro se* amended petition. He is not entitled to relief on this ground.

*Vaughn II*, 2009 WL 1684649, at *12. The petitioner arguably preserved the claim in this court by asserting repeatedly in his habeas petition that he was denied a full and fair hearing and denied the right to present evidence. (*See* ECF No. 1, at 70, 112, 116, 121, 132, 137.)

If the issue were before this court for *de novo* review, the undersigned would conclude that the petitioner did not affirmatively waive his right to testify during the third setting of the first post-conviction hearing; instead, the trial court effectively penalized him for being unrepresented by not reminding the petitioner that it was his opportunity to testify and preparing him to be sworn in. The court never asked the petitioner if he wanted to testify or whether he was waiving his right to testify. The petitioner apparently assumed that the written affidavits he was submitting would be equivalent to testifying.

Nonetheless, at this juncture, the court concludes that the state appellate court's determination that the petitioner waived his right to testify was reasonable. Specifically, at the second setting of the first post-conviction hearing, the trial judge began the proceedings by asking the petitioner, "Do you want to call [Mr. McKinney, the trial attorney] as your first witness, or do you want to testify first, Mr. Vaughn?" (ECF No. 33-14, at 22.) The petitioner responded that he would leave that decision to the state, but the prosecutor told the petitioner that he had the burden of going forward with his proof first. (*Id.* at 23.) The court confirmed: "Right. You can call him or you can testify first, either way, or you can – either way you

want to do it. Call him first and then testify, or testify first and then call him." The petitioner decided to call his trial attorney to testify first. In other words, the trial court informed the petitioner at the outset of the proceedings that he had the right to testify. Consequently, this court finds that the state court's determination that the petitioner chose to submit written documents instead of oral testimony and thus waived his right to testify was not a completely unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2).

Based in large part on the court's conclusion that the state court reasonably determined that the petitioner waived his right to testify during the first post-conviction hearing, the court also finds that the state court's reasonably determined that the petitioner failed to present admissible evidence to support his claim that he would not have entered a plea but for the promise that he would undergo a psycho-sexual evaluation.

Even if the petitioner had testified, it is unlikely he could have proved prejudice resulting from his trial attorney's failure to ensure that he underwent the psycho-sexual evaluation. First, because no evaluation was ever done—and the petitioner admitted on cross-examination at the second post-conviction hearing that he had never requested a psycho-sexual evaluation during the course of his post-conviction proceedings— it is purely speculative at this point to consider whether such an evaluation would have helped or hurt the petitioner during sentencing. Regardless, the petitioner's trial attorney demonstrated a certain myopia when he testified that an evaluation could potentially have aided the petitioner on the issue of the length of the individual sentences but not on the decision whether the sentences should be consecutive or concurrent, which the attorney considered to be the more critical issue. His statement effectively ignored the fact that there is a substantial difference, from a defendant's perspective, between two consecutive eight-year sentences, or a total sentence of sixteen years, and two consecutive ten-year sentences and an effective sentence of ten years. The attorney's vague belief that his client may have waived the evaluation, despite the attorneys' admission that such an evaluation might have helped his client, bespeaks negligence and a general sloppiness, but this court cannot say, based on the current record, that it amounted to an error of constitutional magnitude or that the state court erred in denying relief on the basis of this claim. Again, because reasonable minds could reach a different conclusion, the court will grant a certificate of appealability as to this claim.

*(e) Sentencing Issues*

In the first post-conviction appeal, the Tennessee Court of Criminal Appeals held that the petitioner failed to demonstrate any prejudice resulting from his attorney's failure to re-open the sentencing hearing after the testimony of the minor victim. The petitioner continues to argue in this court that his trial attorney was ineffective "because he allowed Vaughn's sentencing hearing to be closed to the public the entire time," and did not seek to reopen the hearing after the underage witness testified. (ECF No. 1, at 44.) This Court finds that the state court's conclusion that the petitioner failed to show prejudice resulting from his attorney's alleged ineffectiveness was not an unreasonable determination of the facts based on the evidence presented.

With respect to the petitioner's other sentencing-related claims, the Tennessee Court of Criminal Appeals further held that the trial court committed reversible error in failing to permit the petitioner to present evidence of his trial counsel's alleged ineffectiveness at the sentencing stage, requiring remand.

After remand, when the sentencing issues were once again before the appellate court, the court gave short shrift to the petitioner's claims that his trial counsel was ineffective at sentencing, stating only: "The claim that the trial court should have begun sentencing consideration at the minimum for the offense, rather than at the midpoint, has previously been determined in favor of the State." *Vaughn III*, 2014 WL 4104994, at *4. In other words, the court did not expressly address the question of whether trial counsel was ineffective for arguing that sentencing consideration should begin at the middle of the range rather than at the low end. Instead, it referred to its conclusion in the direct appeal that "the mid-range ten-year sentence for each offense [was] clearly justified" in light of the enhancement factors it found to apply, even though it disagreed with the trial court regarding which enhancements were relevant. *Vaughn I*, 2003 WL 21877929. In the direct appeal, the petitioner had argued that the trial court had erred in beginning its sentencing consideration at the midpoint of the sentencing range, which was ten years. The state conceded that the presumptive sentence for a Class B felony is the minimum sentence in the range, eight years in petitioner's case.

The court did not spell out its basis for rejecting the ineffective-assistance claim related to this sentencing issue, but it may be presumed that the court found no prejudice resulting from the trial attorney's clear error in arguing that the presumptive sentence was the midpoint of the sentencing range,

based on its previous determination that the midpoint range was appropriate in the petitioner's case. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."). Although counsel was admittedly negligent in misrepresenting the appropriate presumptive sentence, the conclusion that the petitioner was not prejudiced by that misstep was not unreasonable based on the available evidence. The trial and appellate courts both found that the factors supporting sentence enhancements outweighed the mitigating factors, and the trial judge clearly seemed bent upon sentencing the petitioner to the maximum amount of time permitted by the terms of his plea agreement, such that he would have found a basis for sentencing the petitioner at the midpoint rather than the low end of the sentencing range even if he had started correctly with the presumption that the low end of the range was appropriate. The petitioner has not established that he is entitled to relief on the basis of this claim. Because reasonable minds could reach a different conclusion, the court will grant a certificate of appealability as to this claim too.

### Conclusion—Ineffective Assistance of Trial Counsel

The state-court proceedings in this matter took an unusually convoluted route, and the petitioner's attorney committed several obvious errors. The court nonetheless finds that the petitioner has not established that the state court's determination that he was not prejudiced by his counsel's errors was based on an unreasonable determination of the facts in light of the evidence of record. The petitioner is not entitled to relief on the basis of his claim of ineffective assistance of trial counsel.

### iii. Ineffective Assistance of Preliminary Hearing Counsel

IAC Claim Nos. 16, 17, and 18 are directed toward the performance of preliminary-hearing counsel. Specifically, the petitioner insists that his preliminary hearing counsel was ineffective for failing to object to the introduction of hearsay evidence at the preliminary hearing, including the petitioner's "involuntary inadmissible statements and third party hearsay" (ECF No. 1, at 23), failing to inform the petitioner of his rights at the preliminary hearing or the purpose of the hearing, and failing to object to procedural improprieties at the preliminary hearing, including that the hearing was conducted by an attorney rather than a judge and that there were discrepancies between what the investigating detectives told the petitioner during the interrogation and what they said at the preliminary hearing.

Because the trial court did not permit testimony or evidence regarding this claim in the first post-conviction hearing, the issue was remanded and a second hearing convened at which the petitioner did testify. In the order denying relief, the post-conviction court noted only that the record established that preliminary-hearing counsel met with the petitioner and informed him of the nature of the charges against him, that petitioner's testimony was not credible, and that the petitioner failed to establish the ineffective assistance of preliminary-hearing counsel with clear and convincing evidence. (Post-Remand Order denying post-conviction relief, ECF No. 33-24, at 37.)

The appellate court affirmed, observing that the preliminary-hearing transcript was not in the record, as a result of which the only proof as to what happened at the hearing was the petitioner's testimony during the second evidentiary hearing. Moreover, the petitioner's arguments overlooked the fact that, after the preliminary hearing, the petitioner was indicted and pleaded guilty to two counts of the indictment. These factors, together with the insufficiency of the record, led the court to conclude that the petitioner "failed to show either that general sessions counsel was ineffective or that he was prejudiced thereby." *Vaughn III*, 2014 WL 4104994, at *2.

The state court's rejection of this claim was not unreasonable. Notably, the petitioner's confession to the police, even if it might later have been subject to a motion to suppress, indisputably provided probable cause to support the indictment and, because it was an admission against interest, it was not excludable as hearsay under Tennessee's evidence rules. Tenn. R. Evid. 803(1.2). Moreover, even if the general sessions judge had failed to find probable cause at the preliminary hearing and discharged the defendant, this fact would not necessarily have prevented the case from going to a grand jury, or prevented the grand jury from issuing an indictment. *Cf. State v. Ana*, 506 S.W.2d 200, 203 (Tenn. Ct. Crim. App. 1973) ("[T]he authority and power of a Grand Jury to consider a case and return a presentment or an indictment upon finding probable cause is in no way interfered with or prevented by the fact that a committing magistrate fails to find probable cause and discharges the accused in a preliminary hearing."). And finally, the petitioner's entry of a plea obviated any other objections to the preliminary-hearing proceedings. *See United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012) ("Generally, a voluntary and unconditional guilty plea bars any subsequent non-jurisdictional attack on the conviction." (internal quotations omitted)).

The petitioner is not entitled to relief on the basis of this claim.

### iv.    Ineffective Assistance of Bond-Hearing Counsel

In IAC Claim No. 19, the petitioner argues that his bond counsel (who did not represent the petitioner at any other proceeding) was ineffective for not pursuing his motion to reduce bail and that the petitioner was prejudiced thereby because, if he had been released on bail, he could have worked and thus afforded to hire a different trial attorney, and the entire outcome of his case would have been different. (ECF No. 1, at 27.) The petitioner clearly raised this claim in his initial state post-conviction proceedings (*see* Am. Pet'n for Post-Conviction Relief, ECF No. 33-12, at 21–22) and attempted to call his bond counsel, Judson Phillips, as a witness at the initial post-conviction hearing (*see* 4/29/2007 Letter to Crim. Ct. Clerk requesting subpoenas, ECF No. 33-13, at 73). The post-conviction court did not allow the petitioner to pursue this claim, and the petitioner attempted to appeal on the basis that the post-conviction court had improperly limited the plaintiff's ability to call witnesses. The appellate court did not expressly address this issue in the remand order, but the court presumes it to be fully exhausted.

Regardless of what standard of review applies, the petitioner is not entitled to relief on the basis of this claim. The court presumes the truth of the petitioner's statements regarding his bond-counsel's woeful performance, so an evidentiary hearing is not necessary. The petitioner cannot prove, as a factual matter, that he was prejudiced by his bond counsel's failure to procure his release on bond because, even assuming that counsel would have been able to procure bond if he had followed through with his motion, the petitioner's assertion that the outcome of the case would have been altered is nothing but rank speculation. The petitioner could not prove—even if given endless opportunity to attempt to do so—that being on bond prior to trial would have changed the outcome of the case. The petitioner is not entitled to relief on the basis of this claim.

### v.    Ineffective Assistance of Appellate Counsel

As set forth above, the petitioner asserts that his attorneys on direct appeal were ineffective for failing to raise claims challenging (1) the improper preliminary hearing and the invalidity of the indictment on appeal (IAC Claim No. 59); (2) the insufficiency of the evidence and the possibility of innocence (IAC Claim No. 60); (3) the closed sentencing hearing, unfair bias toward the state, illegal sentence, the use of enhancements about which the petitioner had not been warned, and the lack of a mental-health

evaluation prior to sentencing (IAC Claim No. 61); (4) questionable conduct by the police, prosecutor, and judge (IAC Claim No. 62); and (5) the involuntary and unknowing nature of the plea (IAC Claim No. 63).

The petitioner sought to call his appellate counsel to testify at the first post-conviction hearing but was not permitted to do so. The Tennessee Court of Criminal Appeals directed that he be permitted to do so on remand. At the post-remand pre-evidentiary hearing, the trial court expressly affirmed that the petitioner would be permitted to call his direct-appeal attorneys as witnesses. At the actual evidentiary hearing, however, conducted on June 1, 2015, there was no discussion on the record of whether subpoenas had been issued or whether witnesses were present and available to testify. The petitioner did not make any attempt to call his appellate counsel as witnesses. Instead, he himself testified about the ways in which he believed they were ineffective.

The trial court rejected the claims summarily, stating:

> Petitioner alleges that his conviction was invalid because he received ineffective assistance of counsel from . . . appellate counsel Dwight E. Scott. . . .
>
> . . . .
>
> A close review of the record and testimony presented, reveals that . . . appellate counsel object that they meet [sic] with the defendant and informed him of the nature of the charges against him, the likelihood of and range of punishment, and the nature and consequences of the plea agreement to the petitioner. . . .
>
> Therefore, Petitioner has failed to demonstrate by clear and convincing evidence ineffective assistance of counsel and that the plea was a violation of due process rights in violation of a constitutional right to render his conviction and sentence void or voidable under the Post Conviction Relief Act. Accordingly, the Court finds that Petitioner has failed to show that he was prejudice [sic] by counsel's allegedly deficient conduct.

(ECF No. 33-24, at 35, 37.) Because appellate counsel apparently did not testify, it is not clear to what objections by appellate counsel the trial court was referring. In fact, it seems that the trial court did not actually deem the petitioner's claims of ineffective assistance of appellate counsel worthy of serious consideration.

The appellate court summarily affirmed, stating only:

> As to possible claims against appellate counsel, the petitioner has failed, as best we understand his testimony at the second evidentiary hearing, to identify any alleged deficiencies. Accordingly, we have nothing to consider in this regard.

*Vaughn III*, 2014 WL 4104994, at *4.

To the contrary, the record reflects that the petitioner testified with some specificity during the

second evidentiary hearing about all the ways in which he believed his appellate counsel, Dwight Scott, was ineffective. (June 1, 2010 Hr'g Tr., ECF No. 33-25, at 80–123.) Among other things, the petitioner testified that Mr. Scott did not do his own investigation or file his own appellate brief and instead simply relied on the brief that had been prepared and filed by attorney Jefre Goldtrap (*see* Brief of the Appellant, ECF No. 33-5), and that he promised but failed to file a Rule 11 application for permission to appeal to the Tennessee Supreme Court if the Tennessee Court of Criminal Appeals denied relief. (ECF No. 33-25, at 82.) The petitioner instead filed his own Rule 11 application. (ECF No. 33-8.) The petitioner further insisted that Mr. Scott was ineffective because he failed to raise on the direct appeal the fact that preliminary-hearing counsel was ineffective, to challenge the sentence based on the fact that it was premised in part on inadmissible evidence, including the petitioner's statement to police, even though trial counsel objected to the statement's being considered for sentencing purposes. The petitioner argued that appellate counsel was ineffective for failing to object to the sentencing on the basis that the petitioner was not warned that anything he said could be used against him or that witnesses would be there to testify against him during the sentencing hearing, or on the basis that the sentence itself was illegal, because the lifetime-registration requirement was not made part of the judgment. The petitioner insisted that he had not been notified about the lifetime-registration requirement and that he would not have pleaded guilty if he had known about that requirement. He claimed that appellate counsel should have but failed to argue that the Bill of Particulars was not sufficiently particular, that the court lacked jurisdiction over the crimes that allegedly took place in Texas; and that the indictment was amended without the petitioner's consent, among many other claims. (June 1, 2010 Hr'g Tr., ECF No. 33-25, at 80–123.)

Likewise, in his brief to the Tennessee Court of Criminal Appeals, Vaughn included claims that appellate counsel was ineffective for not arguing on appeal that (1) the plea was invalid because the State did not ensure that Vaughn underwent a mental health evaluation prior to sentencing (Second Post-Conviction Brief, ECF No. 33-29, at 378, 383), which rendered the plea involuntary, the sentence illegal, and the indictment subject to dismissal (*id.* at 383–90); (2) the petitioner's seizure violated the Fourth Amendment (*id.* at 403); (3) his confession was involuntary and should not have been considered during the sentencing hearing (*id.* at 346, 442–43), and should not have been provided to the state's witnesses (*id.* at 459-60); (4) the indictment was defective (*id.* at 493, 497, 502, 508, 510, 515, 520); (5) the court

was without jurisdiction to prosecute the petitioner on Counts 2–9 of the indictment (*id.* at 534); (6) the court improperly sentenced the petitioner under military law (*id.* at 623–24); (7) the police, prosecutor, and judge committed unfair acts during the prosecution (*id.* at 633); and (8) the plea was involuntary because the petitioner was not fully informed regarding the effects of entering a plea (*id.* at 649).

In addition, in the argument section of his appellate, Vaughn reiterated his arguments that appellate counsel was ineffective because:

> counsel did not prepare an appellate brief himself, he instead used a previous counsel's brief, Vaughn never [saw] this brief or signed off on it; counsel did not appeal or investigate Vaughn's claims concerning the [mental-health] evaluation, statements [to police], multiplici[t]ous indictments, or other claims; the direct appeal Appellate Court used inadmissible evidence to deny the direct appeal because of counsel's failure to raise issues; counsel failed to raise the objection made to the statements being used against Vaughn, and Vaughn was entitled to a hearing on the statements['] admissibility before they were used against him because of the objection made to them; then Vaughn gave more information on why the statements were involuntary and inadmissible, and stated there was a reasonable probability for a different result in the proceedings had the statements not been used; that counsel could have raised that Vaughn was not told at his plea about his Fifth Amendment rights, or about enhancements, or that anything he said could be used against him, and that he was misinformed about witnesses testifying; he also testified that the evaluation was why he made the open plea; that he was sentenced contrary to statute law concerning the evaluation; that the lifetime requirement was not in the judgment, and about it violating his due process rights; that the preliminary hearing had due process and jurisdictional issues, and that the indictment was invalid; that there were motions before the court that were never addressed by the court; that the prosecutor withheld information on 8 of the 9 counts; that the evidence showed no offenses were committed against [L.O.] other tha[n] just sleeping to[o] close was in Texas not Tennessee; that the prosecutor changed the indictment date during Vaughn's plea and withheld the different date from him which [a]ffected Vaughn's alibi defense; that neither Vaughn or (counsel) McKinney consented to the newly amended indictment, that no plea was made to the amended indictment, so jurisdictionally Vaughn was under an illegal sentence; that the indictments were multiplici[t]ous and in violation of double jeopardy so Vaughn could not be prosecuted on those counts but he was not informed of this, and that the defective counts were wrongly used to get him to take a plea when there was no true incentive for him to take a plea because the defective counts could not be used against him; that the State broke its agreement with Vaughn because Vaughn did not receive the evaluation the State was suppose[d] to make sure he got; that Vaughn's name is not on the plea agreement that the judge signed; that counsel failed to raise many issues he could have raised concerning illegal sentence, jurisdiction, plain error, due process, plea violations, sentence violations, lack of evaluation, inadmissible statements, counsel starting at 10 years instead of 8 years, and that counsel could have raised everything under jurisdiction, illegal sentencing, plain error, and fundamental fairness, but that counsel failed to do so. And, Vaughn wants it noted here that the State's attorney did not question Vaughn or refute his claims on anything concerning ineffective appellate counsel.

(ECF No. 33-29, at 737–38.)

As indicated above, the post-conviction court dismissed the petitioner's claims of ineffective assistance of appellate counsel without any discussion but with reference to supposed testimony from the

appellate attorney. The court did not acknowledge the fact that the petitioner had attempted to subpoena his appellate counsel to appear at two or three previously scheduled hearings but the court had turned them away without permitted them to testify, and the court did not explain why counsel did not appear at the final hearing, despite the court's having previously assured the petitioner that they would be permitted to testify. The court's finding that appellate counsel had "objected" to the petitioner's testimony was factually incorrect. Likewise, the appellate court's determination that the petitioner had "failed . . . to identify any alleged deficiencies" on the part of appellate counsel, *Vaughn III*, 2014 WL 4104994, at *4, was factually incorrect. The court's conclusion that it had "nothing to consider" with regard to the petitioner's claim of ineffective assistance of appellate counsel was a determination on the merits for purposes of this court's review under 28 U.S.C. § 2254(d), but it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). *Cf. Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("By its own terms, § 2254(d) only applies to those claims 'adjudicated on the merits in State court proceedings.'").

Based on its erroneous and unreasonable determination that the petitioner "failed . . . to identify any alleged deficiencies" on the part of his appellate counsel, the court did not address the questions of whether counsel's performance was actually deficient or whether the petitioner was prejudiced thereby. Consequently, this court's review of the petitioner's claims of ineffective assistance of appellate counsel is *de novo*. The court must therefore consider whether the petitioner has established that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The court finds that the petitioner cannot establish that he was prejudiced by any purported deficiency by appellate counsel. Specifically with regard to the petitioner's claim that his appellate counsel promised but failed to file a Rule 11 application for permission to appeal to the Tennessee Supreme Court, the petitioner cannot establish prejudice because he himself filed a timely Rule 11 application. Because he entered *nolo contendere* pleas to two counts of the indictment in exchange for the dismissal of the remaining claims, the petitioner waived his ability to challenge procedural irregularities at the preliminary hearing, the validity of the indictment, or the sufficiency of the evidence. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("[W]hen a criminal defendant has solemnly admitted in open court

that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the plea."); *State v. Bilbrey*, 816 S.W.2d 71, 75 (Tenn. Ct. Crim. App. 1991) ("A *nolo contendere* plea has the same effect as a guilty plea, absent some statute or rule to the contrary. A guilty plea constitutes a waiver of all nonjurisdictional and procedural defects or constitutional infirmities." (citations omitted)). The petitioner therefore cannot establish that counsel was ineffective for failing to raise such claims or that he was prejudiced by such failure.

As for appellate counsel's alleged ineffectiveness for failing to challenge the sentencing based on the closed sentencing hearing, unfair judicial bias toward the state, the use of enhancements about which the petitioner had not been warned, and the lack of a psycho-sexual evaluation prior to sentencing, the state court actually considered all of these claims in the context of allegations of ineffective assistance of trial counsel. The record supports the state court's determination that the petitioner failed to establish ineffective-assistance of trial counsel with respect to raise these issues. And the petitioner has not offered any evidence of inappropriate conduct by the police, the prosecutor, or the judge in his criminal proceedings. Appellate counsel was therefore not ineffective for failing to raise such claims. Finally, the petitioner had the opportunity to fully litigate the issue of the voluntariness of the plea in the post-conviction proceedings, so the petitioner was not prejudiced by appellate counsel's failure to raise that issue on direct appeal.

For the reasons set forth herein, the court finds that the petitioner is not entitled to relief on the basis of his claims of ineffective assistance of appellate counsel.

**B.      Ground Two—Whether the Plea Was Knowing and Voluntary**

A guilty plea must be entered knowingly, voluntarily, and intelligently in order to be constitutionally effective. *Fitzpatrick v. Robinson*, 723 F.3d 624, 639 (6th Cir. 2013) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). The determination of whether a plea was knowing and voluntary is made after "considering all of the relevant circumstances surrounding the plea." *Id.* (quoting *Brady*, 397 U.S. at 749). For a guilty plea to be valid, the defendant is required to understand the nature of the charges against him and the consequences of pleading guilty, including the possible punishments and loss of other rights. *Id.* However, AEDPA deference applies to a federal court's review of a state court's decision regarding the

validity of a plea. *Id.* The question before this court is therefore whether the state court's decision that the plea was knowing and voluntary was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In his present petition, the petitioner asserts a free-standing claim, separate from his ineffective-assistance claim, that his "plea to the charges was involuntary and unknowing without an understanding of the nature or consequences of the plea, in violation of the 5th and 14th Amendments. . . ." (ECF No. 1, at 71.) The petitioner alleges that his plea was not knowing and voluntary because:

(1) he entered his plea with the understanding that he would undergo a psycho-sexual evaluation prior to sentencing;

(2) the indictment was void, which rendered the plea void;

(3) at the time of the plea, the charges against him had not been fully investigated;

(4) the closed sentencing hearing and sentencing errors rendered the plea void;

(5) errors by the government and fundamental unfairness in the process rendered the plea void;

(6) the petitioner was not adequately or substantially informed of his rights, specifically:

- he was not adequately informed by the trial court that he would be subject to lifetime community supervision following service of his sentence (*see* Habeas Petition, ECF No. 1, at 94–95, 98)

- he was not informed that he would have to register for life as a sex offender (*id.* at 102)

- he was not informed that statements he made in the presentence questionnaire could be used against him at sentencing;

- he was not informed that prior convictions and other enhancements could increase his sentence;

- he was not informed of the actual elements of the charges against him;

- he was not informed of lesser included offenses that the jury would have been told about and of which it might have found him guilty, in the alternative to the more serious charges in the indictment;

- he was not informed that any sentence would have to be served at 100%;

- he was not informed that witnesses could testify against him at sentencing;

- he was not informed that sex offender treatment would be added to his sentence;

- the judge made no inquiry as to factual basis for the plea or to insure that the petitioner understood the charges against him;

- he was not told that a no-contest plea was effectively the same as a guilty plea;

- counsel did not advise him on whether to take the plea;

- the plea form signed by judge did not actually have the petitioner's name on it.

(10) the court lacked jurisdiction over the petitioner; and

(11) the cumulative effect of all these errors rendered the plea involuntary.

(ECF No. 1, at 71–110.)

### *(1)        Failure to Inform Petitioner About Lifetime Community Supervision*

As a factual matter, the plea hearing transcript reveals that the trial court did not ever inform the petitioner that he would be subject to lifetime community supervision after his release from custody, as required by Tenn. Code Ann. § 39-13-524(a), nor do his actual judgments reflect that he will be subject to lifetime community supervision, as required by Tenn. Code Ann. § 39-13-524(b). Notwithstanding those patent deficiencies, the petitioner did not fully exhaust his claim related to this problem by fairly presenting it at every available level of the state court system and by presenting it to the state courts under the same theory in which it is presented here. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

Specifically, in his amended post-conviction petition in the state court, the petitioner asserted that he "was not informed by the trial court, nor did his judgment contain, the mandatory lifetime community supervision as required by law, therefore it renders his sentence illegal and void." (ECF No. 33-12, at 77 (citing *State v. Bronson*, 172 S.W.3d 600 (2005)).) He did not expressly assert that his plea was not knowing and voluntary as a result of the trial court's failure in that regard. Further, while the petitioner did not testify at the plea hearing, he also never asserted in any of the affidavits submitted to the trial court that his plea was not knowing and voluntary based on the trial court's failure to inform him about the statutorily required lifetime community supervision. In his first post-conviction appeal, he asserted in connection with the claim related to "Plea Issues," that "prejudicial error" arose from his attorney's failure to "inform Appellant about the lifetime supervision required by law, and Appellant's plea court did not inform him the registration was for his lifetime, and his judgment does not contain the lifetime requirement, therefore his sentence is illegal and void." (ECF No. 33-17, at 42.) In other words, he challenged the validity of his *sentence* on the basis of the trial court's failure to inform him of the

mandatory supervision requirement or to include it in the judgments, but he did not challenge the validity of his *plea* on that basis. It was not until the petitioner reached this court that he framed his issue as a challenge to the validity of the plea itself based on the trial court's failure to inform him about lifetime supervised release.

State procedural rules, specifically the one-petition rule, Tenn. Code Ann. § 40-30-102(c), and the one-year statute of limitations, Tenn. Code Ann. § 40-30-102(a), bar the petitioner from asserting this claim as a challenge to the validity of the plea in the state court now. As a result, the claim is deemed to be exhausted (because no avenue for raising the claims in state appellate court remains) but procedurally defaulted for the purposes of federal habeas review.

As set forth above, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). In this case, the petitioner does not assert cause for the procedural default or acknowledge that the claim is procedurally defaulted. Consequently, the claim is barred from review as procedurally defaulted.

Even if the claim were properly exhausted, although the *Tennessee* Supreme Court has held that a trial court's failure to inform a defendant about the lifetime community supervision is an error that rises to the level of a constitutional violation,[13] the petitioner has not shown that the state court's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law "as determined by the Supreme Court of the *United States*." See 28 U.S.C. § 2254(d)(1) (emphasis added). To this court's knowledge, the United States Supreme Court has never addressed whether a defendant must be advised that a guilty plea to certain sexual offenses will subject him to mandatory lifetime community

---

[13] In 2010, several years after the petitioner entered his plea, the Tennessee Supreme Court held that "the mandatory sentence of lifetime supervision imposed in addition to other statutorily authorized punishment is a direct and punitive consequence of a plea of guilty to the crimes enumerated in Tennessee Code Annotated section 39-13-524(a)," *Ward v. State*, 315 S.W.3d 461, 476 (Tenn. 2010), including aggravated sexual battery in violation of Tenn. Code Ann. § 39-13-504, the crime to which the petitioner pleaded no contest. The court also held that, when the trial court commits "constitutional error by failing to ensure that the defendant is aware of a direct consequence of his or her guilty plea, the judgment of conviction must be set aside unless the State proves that the error was harmless beyond a reasonable doubt." *Ward*, 315 S.W.3d at 476. The court therefore remanded for factfinding on that issue. In *Ward*, however, unlike in this case, the petitioner properly raised a post-conviction claim that his 2005 plea was not knowing and voluntary as a result of the court's failure to inform him of the lifetime community supervision requirement.

supervision.

In sum, the court finds that the claim was procedurally defaulted and, even if it were not, the petitioner cannot show that the state court's failure to provide relief on the basis of this claim amounted to a violation of clearly established federal law as decided by the United States Supreme Court. He is therefore not entitled to relief on the basis of this claim. The court will, however, issue a certificate of appealability as to this claim.

### (2)    Failure to Inform Petitioner About Lifetime Registration as a Sex Offender

The petitioner fully exhausted his challenge to the validity of his plea based on the trial court's failure to inform him about the sex-offender registry and the requirement that he register as a sex offender for the duration of his life, by raising it in his amended post-conviction petition and on appeal.[14] (*See* Am. Petition, ECF No. 33-12, at 39; Additional affidavit, ECF No. 33-12, at 93, 96; First App. Brief, ECF No. 33-17, at 40–41.) Moreover, although he did not actually testify at the first post-conviction hearing, the transcript of the plea hearing unequivocally establishes that the trial court did not fully inform the petitioner about the requirement that he register for life as a sex offender:

> THE COURT:   All right. Mr. Vaughn, you're here this afternoon, now, getting ready to plead . . . no contest to two counts of Aggravated Sexual Battery. . . .
>
> And there will be two felony convictions that will be sexually oriented. You'd have to sign up with the sexual registry and different other things, such as that, when and if you are released at some point in the future. And do you understand that so far?
>
> THE DEFENDANT:      Yes, sir.

(ECF No. 33-2, at 6–7.)

As discussed above in the context of the ineffective-assistance claim related to trial counsel's failure to inform the petitioner about the sex-offender registry, the state court's finding as a factual matter that the petitioner was adequately informed of the sexual-offender registry was unreasonable based on the facts in the record. Nonetheless, the petitioner is not entitled to relief on the basis of this claim, because the petitioner cannot establish that the trial court's failure to inform him of the registration requirement amounted to a violation of clearly established federal law as decided by the United States

---

[14] The Tennessee sexual offender registration act requires persons convicted of a sexual offense or violent sexual offense to provide to law enforcement officials certain regularly updated information, including the offender's residence, employment, electronic mail or other internet identification, and other personal information. *Ward*, 315 S.W.3d at 468.

Supreme Court. The Tennessee Supreme Court held in *Ward v. State* that the sex-offender registry requirement is a collateral, non-punitive consequence of a guilty plea, one that the Tennessee legislature clearly intended to apply retroactively even to inmates already convicted of sexual offenses. The court held, as a result, that a trial court's failure to inform a defendant entering a guilty plea about the requirement does not render the plea invalid. *Ward*, 315 S.W.3d at 472. Although the Supreme Court has not addressed Tennessee's sex-offender registry law, it has upheld similar statutes against *ex post facto* and procedural due process challenges. *See, e.g.*, *Smith v. Doe*, 538 U.S. 94 (2003) (holding that Alaska's Sex Offender Registration Act is nonpunitive and therefore that its retroactive application did not violate the *ex post facto* clause); *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003) (upholding Connecticut's registry requirement against due-process challenge).

The petitioner is therefore not entitled to relief on the basis of this claim.

### *(3)    The Remaining Challenges to the Validity of the Plea*

The petitioner's remaining claims appear, for the most part, to have been properly exhausted in the state courts. In addressing them, the state appellate court did not actually distinguish between the petitioner's stand-alone claim that his plea was not knowing and voluntary and his claim that his trial counsel was ineffective for failing to insure that the plea was knowing and voluntary. However, the court determined as a general matter that the evidence did not preponderate against the trial court's conclusion that the petitioner was aware of the consequences of his plea. *Vaughn II*, 2009 WL 1684649, at *11. The petitioner has not shown that the state court's conclusion was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

More specifically, while the psycho-sexual evaluation was required by law, there is no evidence that the law was intended to benefit the petitioner, nor is the court aware of any case law holding that the failure to obtain the statutorily required evaluation amounts to a violation of a defendant's federal constitutional rights or renders a plea invalid. In addition, the petitioner's trial attorney testified that he believed that he and the petitioner had waived the evaluation.

The petitioner's assertions that the "void" indictment and counsel's failure to fully investigate the charges against the petitioner rendered the plea void are simply frivolous. Entering a plea obviated any claims relating to possible constitutional violations that predated the plea. *See United States v. Corp*, 668

F.3d 379, 384 (6th Cir. 2012) ("Generally, a voluntary and unconditional guilty plea bars any subsequent non-jurisdictional attack on the conviction." (internal quotations omitted)). Similarly, errors at sentencing could not have had an effect on the petitioner's earlier decision to enter a plea. The petitioner's claim of procedural due-process violations is insufficiently specific to state a viable claim, and the evidence does not support the petitioner's allegations that he was not adequately informed of the elements of the charges against him. And finally, the petitioner has not shown that the court lacked jurisdiction to accept a plea to charges in the indictment alleged to have occurred within the court's geographical reach.

In sum, the petitioner is not entitled to relief on the basis of his claim that his plea was not knowingly, voluntarily and intelligently entered.

## C.    Ground Three—The Closed Sentencing Hearing

The petitioner argues that the closed sentencing hearing violated his Sixth Amendment right to a public trial and his Fifth and Fourteenth Amendment rights to due process and equal protection.

The petitioner raised this claim in his post-conviction proceedings as an ineffective-assistance claim. It was rejected by the state courts, as discussed above, on the basis that the petitioner failed to establish any prejudice arising from his attorney's failure to seek to reopen the sentencing hearing after the minor victim testified. The petitioner did not raise it as a substantive claim during his direct appeal. Consequently, even though he may have attempted to raise the claim as a substantive claim during post-conviction proceedings, the claim was waived and therefore procedurally defaulted under Tennessee state law. *See* Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived [for purposes of post-conviction review] if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented. . . .").

Because the claim was waived in the state court, it is procedurally defaulted and barred from review in this court. Moreover, even if the court presumes that the waiver in question resulted from the ineffective assistance of trial and appellate counsel, the trial courts have already concluded that the petitioner failed to establish any prejudice resulting from the closed sentencing hearing, and that conclusion is supported by the factual record. The petitioner is not entitled to relief on the basis of this claim.

### D.     Ground Four—The Sentence Is Illegal and Void

The petitioner asserts a substantive claim that his sentence is illegal and void under state law and that it violates his federal constitutional right to due process, because it is contrary to state law in at least three ways: (1) the petitioner did not receive a psycho-sexual evaluation prior to sentencing as required by statute; (2) he was sentenced using evidence obtained in violation of the constitution; and (3), he "was not sentenced to lifetime supervision" or informed prior to his plea that he would be subject to lifetime supervision. (ECF No. 1, at 119.)

Again, as with his closed-hearing claim, the petitioner did not raise as substantive claim that his sentence was void and violated his federal constitutional rights during his direct appeal. Consequently, the claim was waived and therefore procedurally defaulted under Tennessee state law. *See* Tenn. Code Ann. § 40-30-106(g). It is therefore barred from review in this court, and the petitioner is not entitled to relief.

### E.     Ground Five—The State of Tennessee Lacks Jurisdiction

The petitioner asserts that he is being held in violation of his rights to due process and equal protection because the State of Tennessee lacked jurisdiction to charge him in any counts involving his stepdaughter, because the underlying crimes were all alleged to have occurred in Texas, prior to the family's relocation to Tennessee.

Besides simply being factually incorrect—the state of Tennessee clearly had jurisdiction over the petitioner's state criminal proceedings arising from offenses that allegedly took place within Tennessee—the petitioner's substantive claims were waived as a result of not being raised in his direct appeal, and are barred from review by this court.

### F.     Ground Six—*Brady* Violations by the State

Finally, the petitioner asserts that the prosecution committed numerous *Brady* violations by suppressing information and evidence material to guilt, punishment and plea decisions, including (1) withholding the bill of particulars; (2) withholding the date of the offenses for counts 2 through 9; (3) withholding the court's lack of jurisdiction; (4) withholding the state's intention to seek sentence enhancements until after the petitioner entered the open plea agreement; and (5) withholding the state's intention to seek consecutive sentencing.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Court subsequently expanded the holding in *Brady* to encompass a duty to disclose evidence even where there has been no request by the accused. *United States v. Agurs*, 427 U.S. 97, 107 (1976). Later, the Court held that the duty covers impeachment as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985).

These cases have no application here. Most of the items to which the petitioner refers either do not constitute favorable evidence or they do not constitute evidence at all, as contemplated by *Brady*. To the extent they qualify as evidence, the petitioner has not shown that such evidence was in the prosecutor's possession to withhold, such as the dates of the offenses of counts 2 through 9 (knowledge of which was solely in the petitioner's possession). The petitioner has not established a *Brady* violation by the state or that he was prejudiced by any alleged withholding of evidence or information.

### G. Whether Petitioner Is Entitled to an Evidentiary Hearing

Under *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), district courts are prohibited from holding evidentiary hearings to supplement the record on habeas claims arising under 28 U.S.C. § 2254(d)(1), the provision that permits relief when the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The Court stated:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward looking language requires an examination of the state court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time[,] *i.e.*, the record before the state court.

*Id.* at 1399.

Likewise, review under Section 2254(d)(2), as its plain language indicates, is limited to "the evidence presented in the State court proceeding." Noting that "review under § 2254(d)(1) focuses on what a state court knew and did," the *Pinholster* court reasoned that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied

federal law to facts not before the state court." *Pinholster*, 131 S. Ct. at 1399. "[F]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient efforts to pursue in state proceedings." *Id.* at 1401.

Thus, it is clear that, under *Pinholster*, "district courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013); *see also Bourne v. Curtin*, 666 F.3d 411, 415 (6th Cir. 2012) (finding that the petitioner was not entitled to an evidentiary hearing because the state courts had adjudicated his claim on the merits and that, under *Pinholster*, the petitioner was "stuck with 'the record that was before the state court'"); *Sheppard v. Bagley*, 657 F.3d 338, 344 (6th Cir. 2011) (refusing to consider evidence not in state-court record in light of *Pinholster*).

The petitioner insists that he was never provided a full and fair hearing by the state courts because as he was "improperly restricted from presenting his claims to the State Court. (ECF No. 3, at 3.) Moreover, many of his claims were not actually adjudicated on the merits. The court is sympathetic to the petitioner's position and observes that the state-court proceedings were somewhat irregular. Regardless, the court finds that, to the extent the underlying claims were adjudicated on the merits, this court's review is limited by 28 U.S.C. § 2254(d) to the state-court record. Moreover, a hearing is not warranted on the claims that were not adjudicated on the merits, because such claims were either procedurally defaulted or are patently without merit, as discussed herein.

The petitioner's motion for an evidentiary hearing will therefore be denied.

V.    **CONCLUSION**

The underlying state-court proceedings were plagued by a number of irregularities and errors, only some of which were ultimately corrected, and the condition of the underlying state-court record strongly suggests that the petitioner might have benefited from the assistance of competent post-conviction counsel. The petitioner affirmatively chose to proceed *pro se*, however, and thus brought upon himself many of the problems that ensued, including his failure to make a complete record by testifying at the post-conviction hearing and his failure to raise claims that might have been meritorious rather than devoting reams of paper and gallons of ink to patently meritless arguments. Regardless, the court has

thoroughly reviewed the entirety of the state court record in light of the petitioner's claims and concludes, for the reasons set forth herein, that the petitioner is not entitled to relief.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

The court finds that the petitioner has made a substantial showing of the denial of a constitutional right with regard to his claims that (1) he was effectively denied the right to testify at his first post-conviction hearing, (2) that his plea was premised on the understanding that he would undergo a psycho-sexual evaluation prior to sentencing, (3) that trial counsel was ineffective for arguing that sentencing consideration should begin at the middle of the range rather than at the low end, (4) that trial counsel was ineffective for failing to adequately inform the petitioner that he would be subject to the state's sex-offender registry requirements for life, and (5) that the plea was not knowing and voluntary as a result of the trial court's failure to inform the petitioner that he would be subject to lifetime community supervision following the expiration of his sentence. A COA will issue as to those claims. The court will deny a COA as to the petitioner's remaining claims, but the petitioner has the prerogative to request a certificate pertaining to his other claims directly from the Sixth Circuit Court of Appeals.

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge